IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES R. SHORT, | ) | |
| | ) | **Case No. 1-07-cv-02260** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES | ) | |
| ARMY CORPS OF ENGINEERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff, James R. Short, by and through the undersigned counsel, respectfully moves this Court for an Order denying defendant's Motion to Dismiss Or, In the Alternative, For Summary Judgment, and granting plaintiff's Cross-Motion for Summary Judgment.

The grounds for this Motion and Opposition are set forth in the accompanying Memorandum In Opposition to Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment, and In Support Of Plaintiff's Cross-Motion For Summary Judgment; Plaintiff's Counterstatement of Material Facts And Response to Defendant's Statement of Material Facts Not In Dispute; and the Affidavit of Steven Urgo, Esq., all of

which are filed herewith in support of plaintiff's Motion.  Plaintiff requests a hearing.  A

proposed form of Order is attached.


Dated:                                    Respectfully Submitted,



                                          _____
                                          Joseph L. McGovern, Esquire
                                          (D.C. Bar No. 936609)
                                          OBERMAYER REBMANN MAXWELL &
                                          HIPPEL LLP
                                          1617 John F. Kennedy Boulevard
                                          Philadelphia, PA 19103
                                          Telephone:  (215) 665-3000
                                          Fax:  (215) 665-3165
                                          *Attorneys for James R. Short, Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES R. SHORT, | ) | |
| | ) | C.A. No. 07-02260 (RMC) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES | ) | |
| ARMY CORPS OF ENGINEERS, | ) | |
| US Army Engineer District, Baltimore) | | |
| | ) | |
| Defendant. | ) | |

### CERTIFICATE OF SERVICE

I, Joseph J. McGovern, Esquire of Obermayer Rebmann Maxwell & Hippel, LLP, counsel for the Plaintiff, hereby certify that on this 28TH day of July, I caused the (1) Plaintiff's Cross-Motion For Summary Judgment And Opposition To Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment; (2) the Counter-Statement of Facts with Exhibits; (3) the Affidavit of Steve Urgo, Esquire in Support of the Motion; (4) the Proposed Order and (5) the Memorandum of Law In Support Thereof to be served via the court's e-mail upon the following:

Rudolph Contreras, Esquire
U.S. Attorney's Office
for the District of Columbia
555 4th Street
Washington, DC 20530
rudolph.contreras@usdoj.gov

Joseph J. McGovern, Esquire
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
One Penn Center - 19th Floor
1617 John F. Kennedy Blvd.
Philadelphia, PA 19103

4299301

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES R. SHORT, )
)     **Case No. 1-07-cv-02260**
Plaintiff, )
)
v. )
)
UNITED STATES )
ARMY CORPS OF ENGINEERS, )
)
Defendant. )
_____ )

## PLAINTIFF'S COUNTERSTATEMENT OF MATERIAL FACTS AND RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.      James R. Short (USMC, Ret.) owns a parcel of real property, designated Lot 64, in the "Whitetail Sanctuary" section of a residential subdivision known as "Ocean Pines" which is located in Worcester County, Maryland.   Mr. Short's property, comprising roughly 30,000 square feet, is one of 64 similarly-sized house lots in Whitetail Sanctuary.

2.      On June 27, 1995, after approximately two years of study, the Corps published a "Jurisdictional Determination" respecting the boundaries of wetlands, over which the Corps has regulatory jurisdiction on all lots and common areas in Whitetail Sanctuary (the "1995 JD").   A Jurisdictional Determination is "a written determination that a wetland and/or water body is subject to regulatory jurisdiction under Section 404 of the Clean Water Act, 33 U.S.C. Section 1344, et seq...." 33 C.F.R. §331.2

3.      On the basis of the 1995 JD, the Corps subsequently granted (and, in some cases, denied) requests by owners for permits to conduct development activities, such as road building, installation of piers, etc., in Whitetail Sanctuary.

4.    The 1995 JD designated several portions of Mr. Short's property, including a small man-made swale that had been dug years before in the center of his property, as wetlands subject to the Corps' regulatory jurisdiction. That determination had legal significance. Among other things, development, such as construction of a residence, is prohibited in or near wetlands. The 1995 JD, particularly the designation of the swale as a wetland, had the effect of greatly limiting one's ability to construct a home on the lot.

5.    Mr. Short contends that the analysis that led to the conclusion in 1995 JD that the swale was a wetland was faulty and did not comply with the requirements of the Corps' policy for delineating wetlands; in particular, the 1987 Corps of Engineers Wetland Delineation Manual.

6.    After being extended for approximately two years, on August 31, 2002, the 1995 JD expired pursuant to the Corps' then- current regulatory guidance. Expiration of the 1995 JD left Mr. Short's property in regulatory limbo. A new JD would be required to know with certainty whether the Corps would continue to consider the swale a wetland.

7.    Accordingly, on October 8, 2002, pursuant to 33 CFR §320.1 (a)(6), Mr. Short submitted an application for a new Jurisdictional Determination (the "JD Application") to the Maryland Department of Environment, which forwarded it to the Corps' Baltimore District. *See* Exhibits "1" & "2"  Mr. Short anticipated that in processing his JD Application, the Corps would follow the analysis prescribed by its Wetland Delineation Manual and conclude that the swale was not a wetland, thereby

2

freeing his property from the legal uncertainties caused by the 1995 JD and its subsequent expiration.

8.     The Corps' failure to act on a JD Application within a reasonable period of time is a violation of a non-discretionary duty and the Corps' own policies. Nevertheless, the Corps refused to even acknowledge, much less process, Mr. Short's JD Application.

9.     A protracted struggle, then ensued.  Mr. Short's environmental consultant and his attorneys made repeated efforts to learn the status of Mr. Short's JD Application and to prod the Corps to act on the application, ultimately to no avail.  For example, on March 14 2003, Mr. Short's environmental consultant followed up a call he had made to the Corps to determine the status of the JD Application.   In his letter, he forwarded supplemental technical data to the Corps.  He asked that the data be considered in connection with the JD Application.  *See* Exhibit "3"  The Corps never responded to, or even acknowledged, that request.

10.     On February 10, 2004, Mr. Short's counsel inquired regarding the status of his Application and requested the Corps' estimated "timeframe for its resolution."  *See* Exhibit "4" The Corps ignored that inquiry also.

11.     On January 16, 2007, frustrated by the Corps' failure to act on his application and unable to informally obtain any information about what the Corps was doing to process the application, Mr. Short submitted a FOIA request to the Corps' FOIA Officer, Michael Fraer.  Mr. Short requested "all documents in the possession, custody or control of the Corps with respect to [his Property] including, but not limited to, any and all wetlands delineations, conservation easements, correspondence generated by the

Corps in response to the JD Application, and any internal memorandum or other documents generated by the Corps in connection with the JD Application." *See* Exhibit "5"

12.    While his FOIA request was pending, Mr. Short continued, through counsel, to try to obtain action on his JD Application. For instance, on January 18, 2007, Mr. Short's counsel had a telephone conference with Margaret Smith (aka "Meg" Smith), a Regulatory Manager in Corps' Headquarters, Washington, D.C. concerning the status of the JD Application. Ms. Smith asked that certain documentation be forwarded to her. She said that after her analysis and consultation with others in the Corps, she would advise as to what was needed to move the application forward.    Following the conference, Mr. Short's counsel faxed a letter to Ms. Smith enclosing approximately 20 pages of materials that she had asked him to furnish. *See* Exhibit "6" Neither Mr. Short nor his counsel ever heard from Ms. Smith again regarding the JD Application.

13.    On February 1, 2007, the Corps' FOIA Officer, Michael Fraer, acknowledged receipt of Mr. Short's FOIA request, assigned it control number "FOIA 07-021," and stated that the Corps had made a "preliminary determination" to grant the request. *See* Exhibit "7"

14.    On February 14, 2007, Mr. Short's counsel again inquired into the status of the JD Application by letter to a different Corps' attorney, Jeff Lorenz. Mr. Lorenz's office is in the Baltimore District Office.    In his correspondence, Mr. Short's counsel asked for specific information.    Ms. Smith was copied on Mr. Short's counsel's correspondence to Mr. Lorenz. *See* Exhibit "8" As with all earlier requests, the Corps never responded to that inquiry and never provided the requested information.

15.    On March 8, 2007, having received no documents or communication from the Corps for almost two months regarding his FOIA request, Mr. Short's counsel inquired of Michael Fraer as to the status of the FOIA request. *See* Exhibit "9" No response was received from Mr. Fraer.

16.    On March 27, 2007, Mr. Short's counsel pointedly asked Mr. Fraer in an email for the courtesy of a response to his March 8th inquiry. More than a week later, Mr. Fraer emailed back, stating that he had not responded to the March 8th inquiry because he was "out of the office" for a "training conference." To complicate the matter further, Mr. Fraer said he had deleted Mr. Short's counsel's email address, so he had no way to get in touch. And in terms of progress on the FOIA request itself, Mr. Fraer reported that the "records holder," to whom he had sent the FOIA request had "never received" his memo requesting the documents. At the time of this conversation, the FOIA request had been in the Corps' hands for 71 days. See Exhibit "9".

17.    None of Mr. Fraer's excuses is a statutorily recognized reason for failing to timely comply with a FOIA request. Under the FOIA, the Corps has 20 days to respond to a request.

18.    When asked the timeframe within which Mr. Short might receive the FOIA documents that would reveal what had happened to his JD Application over the past four and half years, Mr. Fraer said "That's hard to say .... maybe a month to a month and a half." Exhibit "9".

19.    After April, 2007, Mr. Short never again heard from anyone in the Corps regarding his FOIA request.

4298022

20.    The end of the year frequently inspires reflection.  And at the end of 2007, as Mr. Short reflected on the past, he realized that it had been more than five years since had filed his JD Application with the Corps, and nearly eleven months since he had filed his FOIA request to obtain documents that might show what had happened to his JD Application.  Despite inquiries and pleas regarding both matters, he had not received the JD, nor notice of action on his JD Application nor had he received any documents in response to his FOIA request.  In light of his unhappy experience with his government, Mr. Short quite understanding concluded that he had no choice but to either give up . . . or bring a civil action to force the Corps to comply with the FOIA.

21.    On December 17, 2007, Mr. Short filed this suit.

22.    The Corps, in the person of Margaret Smith, first learned of Mr. Short's lawsuit on December 31, 2007.  *See* Exhibit "10," at ¶3. Ms. Smith, it will be recalled, is the Corps Regulatory Manager who had discussed with Mr. Short's counsel in January, 2007 Mr. Short's JD Application.  She is the person who had asked for and received, in a follow-up letter from Mr. Short's counsel, copies of the JD Application and various supporting documents including correspondence between Mr. Short's environmental consultant and the Corps regarding the JD Application.  She is the person who had promised action on Mr. Short's JD Application, but who never again contacted Mr. Short or his attorney on that matter.  And she is the person who in February 2007 became privy to Mr. Short's counsel's dealings with Corps' attorney Jeff Lorenz. *See* Exhibit "8"  At the time of Ms. Smith's involvement with matters relating to Mr. Short's JD Application (January and February 2007) her office was in Corps' Headquarters in Washington, DC.

6

At the time she became aware of Mr. Short's FOIA lawsuit (December 31, 2007) her office was in the Corps' District Office in Baltimore, MD. *See* Exhibits "6" and "10"

23.    In sum, Ms. Smith was directly involved in issues relating to the Corps' stonewalling of Mr. Short's JD Application and was the recipient, while working in Corps' Headquarters in Washington, DC, of documents responsive to Mr. Short's FOIA request.

24.    The Corps has tendered a Declaration, signed by Ms. Smith, Exhibit "10," to demonstrate that it conducted a "thorough search of the Corps' Headquarters." Defendants' Statement of Material Facts Not in Dispute, at p. 2, ¶3  Her Declaration is also offered to show that "the Baltimore District's Regulatory Branch was the only location where responsive records existed." Id.  Ms. Smith's Declaration is offered also to show that the Corps conducted a "reasonable and adequate search for responsive records by employing a method reasonably expected to produce [the records sought by Mr. Short's FOIA request]." Defendants' Memorandum In Support Of Motion To Dismiss Or, In The Alternative, For Summary Judgment at p. 13

25.    In fact, Ms. Smith does not disclose in her Declaration what she did to determine where responsive documents might be located.  In paragraph 5 she states "After making inquiry of the Branch Administrative Staff and Section Chief ... it was determined that responsive documents did exist in the Branch Office." First of all, it is not clear whether Ms. Smith is speaking on the basis of personal knowledge.  Her use of the passive voice suggests that her statement is based on hearsay.  Second, she does not say who made the determination; how it was made; or how the inquiries that underlie the determination rule out the potential for responsive records to exist in other locations.  In

other words, there is no way for the reader to know what Ms. Smith did to ascertain that the "Branch was the only location where responsive records existed."

26.    Ms. Smith also declares in paragraph 5, that she "called ... Corps ... Headquarters ... where I worked prior to becoming Branch Chief in ... Baltimore ..." She gives no clue why she made that call (although it is fair to assume that she recalled her contact with Mr. Smith's counsel and receiving documents from him); who she spoke with; what was said; or how that call related to her search for responsive documents. She simply says she "called Headquarters." This being the only mention of Ms. Smith's contact with Headquarters, it is fair to assume that this is the statement the Corps relies upon to show the thoroughness and reasonableness of its search of Headquarters.

27.    Ms. Smith also reports, in paragraph 5, that "no documents exist of that conversation," referring to her January 18, 2007 conversation with Mr. Short's counsel as reflected on Exhibit 6. No explanation is offered by Ms. Smith as to how she concluded the copy of Exhibit 6 that was sent to Headquarters does not exist. Nor does she explain what she did to locate it or the 20 pages of attachments that she received with it. Ms. Smith fails to mention altogether the copy of the letter to Jeff Lorenz that was sent to her at Headquarters in February, 2007. *See* Exhibit "8" In sum, ¶5 fails to show that Ms. Smith or anyone else conducted "a thorough search of Corps' Headquarters." Defendants' Statement of Facts at ¶3. Nor does it show that the "Branch was the only location where responsive records existed." *Id.*

28.    With respect to issues that always must be considered when conducting a search for documents Ms. Smith's Declaration tells us nothing. For example, whose email accounts were searched. She is silent with respect to what she did to ascertain

4298022

whether responsive documents were on microfiche or digital media. What did her inquiry tell her about where she searched and why? What did she do to whether responsive documents were put in storage? Based on the absence of detail in her Declaration, she does not appear to know that a proper search would include records dating from 1993, the year the studies which were the basis of the 1995 JD were performed.

29.    Ms. Smith does disclose in paragraph 6 of her Declaration that Mr. Francis searched "files relating to lot 64." She does not appear to know, however, that responsive documents would be located in other files. For example, the 1993 studies upon which the 1995 JD was based, and related materials including easements, covenants, restrictions etc, all of which were requested by Mr. Short, would not be found in a file labeled "Lot 64." The 1995 JD covered all lots in Whitetail Sanctuary, including lot 64. Did Mr. Francis search all files containing documents that related to all of Whitetail Sanctuary, including lot 64? Perhaps a file labeled "1995 JD"; or a file called White Tail Sanctuary Permits"; or "Whitetail Sanctuary 1993 Wetland Survey." Ms. Smith tells us nothing about what was done to ensure that all relevant files were searched.

30.    Ms. Smith nevertheless concludes that Mr. Francis' search was "thorough." Maybe it was; but most likely it wasn't. No one can tell from the Declaration, because the facts upon which that conclusion could be based are not presented.

31.    Ms. Smith also concludes that the Corps "exercised due diligence and engaged in a thorough and reasonable search of records of the Baltimore District, Regulatory Branch." But, again, she offers no facts to support those conclusions.

32.    Ms. Smith's Declaration does not state any facts from which one can conclude that the form of all responsive documents (hardcopy, electronic, digital, etc.) was ever determined; or that the probable location of all responsive documents was ever determined; or what the scope of the search was properly defined; or that she (or anyone) oversaw the search.  Thus, there is no basis, in her declaration from which one could conclude that a thorough search was conducted; or even that a reasonable search was conducted.  It follows, of course, that one cannot conclude from the Smith Declaration that all locations, including electronic media, where responsive documents are located were even identified, let alone searched.

33.    Ms. Smith's failure to locate the two letters and 20 pages of attachments that were sent directly to her in the same year that she "coordinated" the search, coupled with her conclusion that those documents "do not exist," casts serious doubt on her credibility as a "coordinator," "searcher" and "declarant."

34.    On January 4, 2008, the Corps sent 438 pages of documents and 19 pages of drawings to Mr. Short's counsel.  In its transmittal letter, the Corps "sincerely apologized" for the one year delay in responding to Mr. Short's FOIA request.  The reason for the delay?  Mr. Short's request had been "lost" *See* Exhibit "11" and it did not get "found" until he sued. See Exhibit "10" at ¶3.

35.    Once Mr. Short sued, the Corps sprung into action; found his "lost" FOIA request; performed a search of the most obvious place responsive records might be located; and sent 400 plus pages of documents and 19 drawings to him, all within four days.

36.     The Corps has also submitted a Declaration by Michael Fraer who, like Ms. Smith, is a "FOIA Coordinator." *See* Exhibit "12" It will be recalled that Mr. Fraer is the gentleman who explained in April 2007 that he did not respond to Mr. Short's counsel's request for a status update on the FOIA request when it was 71 days old, because he was at a "training conference" and he had accidentally "deleted" Mr. Short's counsel's email address. Mr. Fraer is also the person who's initial request to the "record holder" had inexplicably "never been received."

37.     After it was brought to Mr. Fraer's attention, by Mr. Short's counsel's March 27, 2007 request for a status update, that Mr. Fraer's first request to the "record holder" had "never been received" he issued a second request to the Baltimore District Regulatory Branch. See Exhibit "12" at ¶ 8. However, the Baltimore District Regulatory Branch never responded or produced records in response to Mr. Fraer's second request – because that request was, in turn, "lost." *See* Exhibit 11 Mr. Fraer opines, in paragraph 9 of his Declaration that the Regulatory Branch "is the only location in which the requested records might have been located." The sole reason he offers for that statement is his understanding that "this Branch has administrative custody and control over all regulatory permit matters within USACE Baltimore." Mr. Fraer fails to disclose the source of his knowledge. He says he is familiar with the "records and events" discussed in his Declaration. That does not, however, explain the basis for his understanding of the scope of the Branch's functions, including recordkeeping. Absent knowing the basis for his conclusion regarding the records, conclusion has no evidentiary value. Further, Mr. Short's request is broader than the interpretation Mr. Fraer has applied to it. Mr. Short's FOIA request included 'all documents ... with respect to the parcel ...". As noted

above, responsive documents were sent to Ms. Smith in Corps' Headquarters, Washington, DC. Mr. Fraer's conclusion about where records "might" be located is simply wrong as a matter of undisputed fact. More importantly, like Ms. Smith, Mr. Fraer tells us nothing about what he did to rule out other locations, e.g., off-site storage facilities. And Mr. Fraer offers no testimony as to the scope of the search that was conducted, e.g., did it include archived files? Did it include email? If so, whose email? How was it decided whose email would be searched? Who made that decision? One would expect memoranda from the Corps' counsel. None was produced. Were counsel's files searched?

38. The Corps says it offers Mr. Fraer's Declaration to show that a "thorough search of Corps' Headquarters" was made. Defendant's Memorandum at p. 11 and Defendant's Statement of Facts ¶ 3. The Fraer Declaration shows no such thing. In fact, the word "Headquarters" does not even appear in Mr. Fraer's Declaration. *See* Exhibit "12"

39. Mr. Fraer does state that "a thorough search of the records in the Regulatory Branch was conducted." He offers no support for that conclusion, however. Moreover, that search allegedly occurred on January 3 and 4, 2008 – fully nine months after he sent his second request to the Regulatory Branch and the Regulatory Branch lost it. The search Mr. Fraer refers to was conducted after this lawsuit was filed and was coordinated (whatever that means) by Ms. Smith. *See* Exhibit "10" paragraph 2. Mr. Fraer has offered no evidence that he has any personal knowledge of the search that resulted in documents being sent to Mr. Short's counsel.

40.    Notwithstanding the production by the Corps on January 7, 2008, of certain permits, maps and historical correspondence related to his property, Mr. Short did not receive and still has not received all of the documents he requested and to which he is statutorily entitled.

41.    After reviewing the Corps' production, Mr. Short identified at least six categories of documents that the Corps had failed to produce in response to his FOIA request. These categories of documents were set forth in a letter dated January 18, 2008, to Jeff Lorenz from Mr. Short's counsel as follows:

1.  Permit application for Permit No. CENAB-OP-RS(SECTION 15B)94-67271-1;

2.  Permit application for Permit No. CENAB-OR-RS(OCEAN PINES L.L.C. – BALFOUR HOLDINGS INC.)94-65634-1;

3.  All easements and/or covenants concerning tidal and/or non-tidal wetlands that were accepted by the Corps on October 12, 1995 – as identified at paragraph 13 of permit no. CENAB-OP-RS(SECTION 15B)94-67271-1;

4.  All exhibits designated as Exhibit "H" of the November 2, 1995 Declaration and Agreement of Easement between Ocean Pines, L.L.C. and Ocean Pines Association (the "Easement");

5.  State of Maryland Nontidal Wetlands and Waterways Permit No. 199465634 identified at paragraph 3 of the Easement;

6.  All wetland delineation reports, including but not limited to all figures, aerial photographs, maps, soil and plant surveys and field notes used in preparation of Exhibit G – Section 15B Boundary Survey and Wetlands Location dated October 1993 and prepared by Atlantic Consulting.

*See* Exhibit "13"

42.    The Corps has offered no evidence, by way of Declaration or otherwise, to address this issue. The same day that Mr. Short's counsel complained to Mr. Lorenz that six categories of documents were missing, Mr. Lorenz wrote back saying that "most" of

the specified documents are not in the Corps' files. This does not answer the fundamental question whether the documents are in files that were not searched. It is rather curious (and hard to believe) that Mr. Lorez could determine so quickly that the six categories do not exist.

43.    On January 24, 2008, Mr. Short renewed his request for the six categories of missing documents and expanded his FOIA request to include a copy of the Corps' Document Retention and Destruction Policy, along with an index of other specified documents in an effort to learn if the missing documents had been destroyed and, if so, when such destruction had taken place relative to his FOIA request. *See* Exhibit "15"

44.    The Corps ignored this request. Instead, on April 17, 2008, the Corps filed a motion to dismiss this suit or, alternatively, for summary judgment.

## Plaintiff's Response to Defendant's Statement of Material Facts Not in Dispute

Plaintiff responds to the numbered paragraphs in the Corps' Statement of Material Facts in Dispute as follows:

1.    Undisputed.

2.    Disputed. The Freer Declaration does not provide any basis for the conclusion set forth in this paragraph.

3.    Disputed. No competent evidence has been offered to support the conclusions set forth in this paragraph.

4.    Undisputed.

5.    Undisputed.

6.    Disputed in part.  No competent evidence has been offered to explain why the Corps failed to act on Mr. Short's FOIA request for one year.

7.    Disputed.  There is no competent evidence in this case to support the conclusion that the Corps "performed a thorough and reasonable search."

8.    Disputed.  The Corps has not produced all requested documents, including the six categories of missing documents identified on Exhibit "13" and the Corps' Document Retention and Destruction policy.

9.    Disputed in part.  There are responsive records that were not produced: Some documents were sent to Mr. Short on January 4, 2008 and received on January 7, 2008.

10.    Disputed.  Six categories of missing documents and the Corps' Document Retention and Destruction policy were asked for and have not been produced.

Dated:    7/28/08            Respectfully Submitted,

Joseph J. McGovern, Esquire
(D.C. Bar No. 936609)
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone:  (215) 665-3000
Fax:  (215) 665-3165
*Attorneys for James R. Short, Plaintiff*

# EXHIBIT 1

# Wetland Delineation Report
# For Ocean Pines Section 15B Lot 64
# Tax Map 21 - Parcel 68
# Worcester County, Maryland

### October 8, 2002

*Prepared For:*

Robert J. Short
30 Harlan Trace
Berlin, Maryland 21811
(410) 641-8591

*Prepared By:*

D&D Civil and Environmental
Engineering, Inc.
P.O. Box 3353
Ocean City, Maryland 21843
Phone: (410) 208-0282

Atlantic Resource Management, Inc.
3 Division Street
Onancock, Virginia 23417
Phone: (757) 789-3383

*Submitted By:*

Nicholas DeGennaro, Ph.D., PE
D&D Civil and Environmental Engineering, Inc.

Kenneth W. Redinger, President
Atlantic Resource Management, Inc.

*Wetland Delineation Report*
*Ocean Pines Section 15B Lot 64*
*Worcester County, Maryland*
*Applicant: Robert J. Short*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

SITE CHARACTERIZATION ........................................................... 1

INVESTIGATION METHODS ........................................................ 1

INVESTIGATION RESULTS ........................................................... 2

SUMMARY AND CONCLUSIONS ................................................ 3

## APPENDICES

A. Site Maps

    Figure 1: Vicinity Map

    Figure 2: U.S.G.S. Quadrangle

    Figure 3: Soil Survey

B. Wetland Data Sheets

C. Site Photos

# INTRODUCTION

The applicant, Robert J. Short, has retained Atlantic Resource Management, Inc. and D&D Civil and Environmental Engineering, Inc. to delineate jurisdictional wetlands within Lot 64 of Section 15B of the Ocean Pines subdivision (Parcel 68 - Tax Map 21), in Worcester County, Maryland. The parcel is located on the northeast corner of the intersection of Port Arthur Court and Ocean Parkway within Ocean Pines (Vicinity Map, Figure 1, Appendix "A"). The development of a single-family home with attendant features is proposed.

# SITE CHARACTERIZATION

**LAND USE:** The 30,853 square foot parcel consists of mid-succession pine and mixed hardwood forest. The parcel borders an unnamed canal off Manklin Creek. Adjacent land use is residential development.

**TOPOGRAPHY AND HYDROLOGY:** The U.S. Geological Survey Berlin quadrangle (7.5-minute series) identifies site elevations of less than 5 feet above sea level, which generally decrease northward to the canal (Figure 2, Appendix "A"). Fill material is present in the northeastern portion of the site, allowing for a 2 feet rise in elevation where present. An excavated ditch, with no hydrologic connections to the adjacent canal, is present in the southern portion of the site.

**SOILS:** Sheet 11 of the Soil Survey of Worcester County, Maryland identifies poorly drained Fallsington sandy loam (Fa) within the subject parcel. The Fallsington series is present on the Natural Resource Conservation Service list of hydric soils.

**100-YEAR FLOODPLAINS:** As identified on the Federal Emergency Management Agency's (FEMA) Flood Insurance Rate Map Number 240083 0025 A (February 15, 1979), the parcel is located within Flood Zone "A7" (areas of special flood hazard, inundated by 100-year flood).

# INVESTIGATION METHODS

A routine level field investigation was conducted on August 7, 2002 by Kenneth W. Redinger of Atlantic Resource Management, Inc. to delineate wetlands for the purpose of Section 404 of the Clean Water Act. The investigation was conducted in accordance with techniques and criteria provided in the 1987 Corps of Engineers Wetland Delineation Manual (in conjunction with regulatory guidance letters released on October 7, 1991, and March 6, 1992) and the Code of Maryland Regulations Title 26, Subtitles 23 and 24. Information regarding vegetation, hydrology, and soils was recorded on Routine Wetland Determination Data Forms (Appendix "B"). Wetland boundaries were identified in the field with consecutively numbered pink pin flags, and surveyed by Frank G. Lynch, Jr. and Associates, Inc. (Wetland Delineation Plan, dated August 29, 2002 and revised September 27, 2002, attached). Vegetation communities were characterized using a 5-stratum approach, with tree, sapling, shrub, woody vine, and herbaceous species recorded in descending order of abundance. Visual estimates of abundance and canopy position were taken at each sampling point, with individuals in discernible view of plot center considered. The wetland indicator status of plant species was confirmed using the 1988 National List Of Plant Species That Occur In Wetlands: Northeast (Region 1). The hydrology parameter was evaluated by visual observation of inundation and/or soil saturation during the field investigation. Soil descriptions were taken at each sampling point using a 3.25-inch diameter hand bucket auger. Information regarding soil horizon depth, matrix color, redoximorphic features, and texture was recorded. Soil colors were determined using the Munsell Color Chart (2000). Soils were described in accordance with criteria found in the U.S. Department of Agriculture Soil Survey Manual (1993).

1

# INVESTIGATION RESULTS

A total of 4,299 square feet of forested non-tidal wetlands were identified within the 30,853 square foot parcel. The remaining 26,554 square feet were classified as uplands. Three representative data points were taken to describe existing site conditions (Appendix "B"). Data Point 1 describes wetlands, and Data Points 2 and 3 describe uplands. Final authority as to the accuracy of this delineation and the jurisdictional status of wetlands within the parcel rests with the Baltimore District U.S. Army Corps of Engineers.

## WETLANDS (Data Point 1)

Wetlands identified during the investigation were characterized by the presence of a hydrophytic vegetation community, evidence of seasonal inundation, and hydric soils. A dense stand of *Phragmites* dominates the central portion of the non-tidal wetland depression, with woody vegetation limited to a narrow fringe along the wetland/upland boundary (Photo 1, Appendix "C"). Dominant canopy species include loblolly pine (*Pinus taeda*, FAC-), red maple (*Acer rubrum*, FAC), and sweet gum (*Liquidamber styraciflua*, FAC). Common understory species include red maple, sweet gum, black gum (*Nyssa sylvatica*, FAC), bayberry (*Myrica pennsylvatica*, FAC), high-tide bush (*Baccharis halimifolia*, FACW), and poison ivy (*Toxicodendron radicans*, FAC). Herbaceous species include phragmites (*Phragmites spp.*, FACW), swamp smartweed (*Polygonum hydropiperoides*, OBL), switchgrass (*Panicum virgatum*, FAC), virginia wild rye (*Elymus virginicus*, FACW-), and American germander (*Teucrium canadense*, FACW-). The hydrophytic vegetation parameter was confirmed by 93% (13/14) of the plant species present having a wetland indicator status of FAC, FACW, or OBL.

Depth to groundwater was 52 inches from the surface during the investigation. Evidence of seasonal inundation was observed throughout.

The hydric soil parameter was confirmed by the presence of a low chroma matrix (10YR 6/1) with redox concentrations (7.5YR 5/8) immediately beneath the "A" horizon. These soils are similar to the poorly drained Fallsington series, as identified in the soil survey.

Wetland line "A" on the attached site plan depicts tidal wetland limits, and the northern property boundary adjacent to the canal (Photo 2, Appendix "C"). At high tide, water levels within the canal were approximately 12 inches below the plane of the adjacent soil surface.

## UPLANDS (Data Points 2 and 3)

Approximately 26,554 square feet of the subject parcel was classified as uplands. While a FAC dominated vegetation community was present in these areas, no evidence of wetland hydrology or hydric soils was observed.

Data Point 2 represents pine and mixed hardwood forest in the western portion of the site. Dominant canopy species are loblolly pine, red maple, sweet gum, and black cherry (*Prunus serotina*, FACU), (Photo 3, Appendix "C"). Common understory species include sweet gum, black cherry, red maple, bayberry, poison ivy and common green briar (*Smilax rotundifolia*, FAC). The hydrophytic vegetation parameter was confirmed by 70% (7/10) of the species present having a wetland indicator status of OBL, FACW, or FAC.

Groundwater levels were greater than 62 inches from the surface during the investigations. The relative landscape position is a broad backslope and an upper toe slope. No evidence of wetland hydrology was observed.

Based on morphological interpretations, depth to seasonal saturation is 19 inches or greater. No hydric soil indicators were present in the top 18 inches of the profile. Soils are moderately well drained, and similar to the Woodstown series.

Approximately 70 linear feet of drainage ditch is located in the southern portion of the site. This drainage feature is constructed through uplands and has no surface water connections to the adjacent canal.

Data Point 3 represents pine and mixed hardwood forest in the northeastern portion of the site (Photo 4, Appendix "C"). These uplands are isolated from the remaining parcel by the non-tidal wetland depression. Dominant canopy species are loblolly pine, red maple, sweet gum, and eastern red cedar (*Juniperus virginiana*, FACU). Common understory species include red maple, sweet gum, black cherry, sassafras (*Sassafras albidum*, FACU-), and bayberry. The understory is sparse throughout. The hydrophytic vegetation parameter was confirmed by 56% (5/9) of the species present having a wetland indicator status of OBL, FACW, or FAC.

Groundwater levels were greater than 62 inches from the surface during the investigations. No evidence of wetland hydrology was observed.

Approximately 2 feet of fill material is present in the northeastern portion of the site. Based on the age of existing forest cover, fill placement occurred at least 25 years prior to the current investigation. Soils beneath the fill material are similar to poorly drained Fallsington sandy loam, as identified in the soil survey.

## SUMMARY AND CONCLUSIONS

A total of 4,299 square feet of forested non-tidal wetlands were identified within the 30,853 square foot parcel. The remaining 26,554 square feet were classified as uplands.

Wetlands identified during the investigation were characterized by the presence of a hydrophytic vegetation community, evidence of seasonal inundation, and hydric soils.

While a FAC dominated vegetation community is present within areas classified as uplands, no evidence of wetland hydrology or hydric soils was observed.

The drainage ditch located in the southern portion of the site is a manmade feature constructed through uplands, with no surface water connections to the adjacent canal, and is therefore not regulated under section 404 of the Clean Water Act.

Final authority as to the accuracy of this delineation and the jurisdictional status of wetlands within the parcel rests with the Baltimore District U.S. Army Corps of Engineers.



**FIGURE 1 – VICINITY MAP**
Ocean Pines Section 15B Lot 64
Tax Map 21 – Parcel 68
Worcester County, Maryland
Applicant: Robert J. Short

# APPENDIX "B"

## Field Data Sheets

*Ocean Pines Section 15B Lot 64*

*Tax Map 21 - Parcel 68, Worcester County, Maryland*

*Applicant: Robert J. Short*

DATA FORM
ROUTINE WETLAND DETERMINATION
(1987 COE Wetlands Delineation Manual)

Project/Site: OCEAN PINES SECTION 15B LOT 64

Applicant/Owner: ROBERT J. SHORT

Investigator: K.W. REDINGER / ARM, INC.

Date: 8/7/02
County: WORCESTER
State: MARYLAND

Do Normal Circumstances exist on the site? (Yes) No
Is the site significantly disturbed (Atypical Situation)? Yes (No)
Is the area a potential Problem Area? Yes (No)
    (If needed, explain on reversa.)

Community ID: WETLANDS
Transect ID: _____
Plot ID: _____ 1

## VEGETATION

| Dominant Plant Species | Stratum | Indicator | Dominant Plant Species | Stratum | Indicator |
|---|---|---|---|---|---|
| 1. LOBLOLLY PINE | T | FAC- | 9. POISON IVY | WV | FAC |
| 2. RED MAPLE | T | FAC | 10. P. HYDROPIPEROIDES | H | OBL |
| 3. SWEET GUM | T | FAC | 11. PANICUM VIRGATUM | H | FAC |
| 4. RED MAPLE | SA | FAC | 12. ELYMUS VIRGINICUS | H | FACW- |
| 5. SWEETGUM | SA | FAC | 13. TEUCRIUM CANADENSE | H | FACW- |
| 6. BLACK GUM | SA | FAC | 14. PHRAGMITES | H | FACW |
| 7. BAYBERRY | SH | FAC | 15. | | |
| 8. BACCHARIS | SH | FACW | 16. | | |

Percent of Dominant Species that are OBL, FACW or FAC
(excluding FAC-).      93% (13/14)

Remarks: CENTRAL AREA DOMINATED BY PHRAGMITES WITH WOODY VEG LIMITED TO WETLAND/UPLAND BOUNDARY

## HYDROLOGY

___ Recorded Data (Describe in Remarks):
    ___ Stream, Lake, or Tide Gauge
    ___ Aerial Photographs
    ___ Other
_X_ No Recorded Data Available

Field Observations:

Depth of Surface Water: ___Ø___ (in.)

Depth to Free Water in Pit: ___52___ (in.)

Depth to Saturated Soil: ___44___ (in.)

Wetland Hydrology Indicators:
Primary Indicators:
    ___ Inundated
    ___ Saturated in Upper 12 Inches
    ___ Water Marks
    ___ Drift Lines
    ___ Sediment Deposits
    ___ Drainage Patterns in Wetlands
Secondary Indicators (2 or more required):
    ___ Oxidized Root Channels in Upper 12 Inches
    _X_ Water-Stained Leaves
    _X_ Local Soil Survey Data
    _X_ FAC-Neutral Test
    ___ Other (Explain in Remarks)

Remarks: EVIDENCE OF SEASONAL INUNDATION THROUGHOUT, LANDSCAPE POSITION TOE SLOPE/DEPRESSION

SOILS  DSP #1 - WETLANDS

Map Unit Name
(Series and Phase): FALLSINGTON SANDY LOAM

Drainage Class: PD

Taxonomy (Subgroup): TYPIC OCHRAQUULT

Field Observations
Confirm Mapped Type? (Yes) No

Profile Description:

| Depth (inches) | Horizon | Matrix Color (Munsell Moist) | Mottle Colors (Munsell Moist) | Mottle Abundance/Contrast | Texture, Concretions, Structure, etc. |
|---|---|---|---|---|---|
| 0-7 | A | 10YR4/1 | 5YR 5/8 | F-C1D | SL |
| 7-16 | Bg | 10YR6/1 | 7.5YR 5/8 | C2P | SL |
| 16-23 | BEg | 2.5Y 6/1 | 7.5YR 5/8 / 5YR5/8 | M2P / C1P | SCL |
| 23-30 | Cg1 | 2.5Y 7/1 | NONE | NONE | LS |
| 30-36 | Cg2 | 2.5Y 7/1 | 7.5YR5/8 | M3P | LS |
| 36-48 | 2BEg | 2.5Y5/1 | NONE | NONE | SCL |

Hydric Soil Indicators:

___ Histosol
___ Histic Epipedon
___ Sulfidic Odor
___ Aquic Moisture Regime
___ Reducing Conditions
_X_ Gleyed or Low-Chroma Colors

___ Concretions
___ High Organic Content in Surface Layer in Sandy Soils
___ Organic Streaking in Sandy Soils
_X_ Listed on Local Hydric Soils List
_X_ Listed on National Hydric Soils List
___ Other (Explain in Remarks)

Remarks:   HYDRIC SOIL INDICATORS CONFIRMED

## WETLAND DETERMINATION

Hydrophytic Vegetation Present?   (Yes) No   (Circle)
Wetland Hydrology Present?   (Yes) No
Hydric Soils Present?   (Yes) No

Is this Sampling Point Within a Wetland?   (Yes) No   (Circle)

Remarks:   NON-TIDAL WETLAND DEPRESSION IN EASTERN PORTION OF SITE, DOMINATED BY PHRAGMITES.

Approved by HQUSACE 3/92

DATA FORM
ROUTINE WETLAND DETERMINATION
(1987 COE Wetlands Delineation Manual)

| | |
|---|---|
| Project/Site: OCEAN PINES SECTION 15B LOT 64 | Date: 8/7/02 |
| Applicant/Owner: ROBERT J. SHORT | County: WORCESTER |
| Investigator: K.W. REDINGER / ARM, INC | State: MARYLAND |

| | | |
|---|---|---|
| Do Normal Circumstances exist on the site? | (Yes) No | Community ID: UPLANDS |
| Is the site significantly disturbed (Atypical Situation)? | Yes (No) | Transect ID: |
| Is the area a potential Problem Area? | Yes (No) | Plot ID: 2 |
| (If needed, explain on reverse.) | | |

## VEGETATION

| Dominant Plant Species | Stratum | Indicator | Dominant Plant Species | Stratum | Indicator |
|---|---|---|---|---|---|
| 1. LOBLOLLY PINE | T | FAC- | 9. POISON IVY | WV | FAC |
| 2. RED MAPLE | T | FAC | 10. COMMON GREENBRIAR | WV | FAC |
| 3. SWEET GUM | T | FAC | 11. | | |
| 4. BLACK CHERRY | T | FACU | 12. | | |
| 5. SWEET GUM | SA | FAC | 13. | | |
| 6. BLACK CHERRY | SA | FACU | 14. | | |
| 7. RED MAPLE | SA | FAC | 15. | | |
| 8. BAYBERRY | SH | FAC | 16. | | |

Percent of Dominant Species that are OBL, FACW or FAC
(excluding FAC-).        70% (7/10)

Remarks: PINE AND MIXED HARDWOOD FOREST WITH OPEN
UNDERSTORY

## HYDROLOGY

___ Recorded Data (Describe in Remarks):
___ Stream, Lake, or Tide Gauge
___ Aerial Photographs
___ Other
_X_ No Recorded Data Available

Field Observations:

Depth of Surface Water:        ∅        (in.)

Depth to Free Water in Pit:        >62        (in.)

Depth to Saturated Soil:        60        (in.)

Wetland Hydrology Indicators:
Primary Indicators:
___ Inundated
___ Saturated in Upper 12 Inches
___ Water Marks
___ Drift Lines
___ Sediment Deposits
___ Drainage Patterns in Wetlands
Secondary Indicators (2 or more required):
___ Oxidized Root Channels in Upper 12 Inches
___ Water-Stained Leaves
___ Local Soil Survey Data
___ FAC-Neutral Test
___ Other (Explain in Remarks)

Remarks: NO EVIDENCE OF WETLAND HYDROLOGY, LANDSCAPE
POSITION BACKSLOPE AND UPPER TOE SLOPE

SOILS  DSP #2 - UPLANDS

Map Unit Name
(Series and Phase): WOODSTOWN SANDY LOAM          Drainage Class: MWD

Taxonomy (Subgroup): AQUIC HAPLUDULT          Field Observations
                                              Confirm Mapped Type?  Yes  (No)

Profile Description:

| Depth (inches) | Horizon | Matrix Color (Munsell Moist) | Mottle Colors (Munsell Moist) | Mottle Abundance/Contrast | Texture, Concretions, Structure, etc. |
|---|---|---|---|---|---|
| 0-8 | A | 10YR4/2 | NONE | NONE | SL |
| 8-19 | B1 | 10YR5/6 | NONE | NONE | SL |
| 19-28 | B2 | 10YR5/6 | 7.5YR5/8 2.5Y6/3 | C2D M3D | SL |
| 28-38 | BC | 10YR6/1 & 7.5YR5/8 | MIXED MATRIX | | LS |

Hydric Soil Indicators:

___ Histosol
___ Histic Epipedon
___ Sulfidic Odor
___ Aquic Moisture Regime
___ Reducing Conditions
___ Gleyed or Low-Chroma Colors

___ Concretions
___ High Organic Content in Surface Layer in Sandy Soils
___ Organic Streaking in Sandy Soils
___ Listed on Local Hydric Soils List
___ Listed on National Hydric Soils List
___ Other (Explain in Remarks)

Remarks: DEPTH TO SEASONAL SATURATION 19"+ BASED ON MORPHOLOGY.
MAPPED AS FALLSINGTON IN SOIL SURVEY

WETLAND DETERMINATION

| | | |
|---|---|---|
| Hydrophytic Vegetation Present? | (Yes) No (Circle) | (Circle) |
| Wetland Hydrology Present? | Yes (No) | |
| Hydric Soils Present? | Yes (No) | Is this Sampling Point Within a Wetland?  Yes (No) |

Remarks: FAC DOMINATED FOREST WITH SIGNIFICANT COMPONENT
OF UPLAND SPECIES

Approved by HQUSACE 3/92

DATA FORM
ROUTINE WETLAND DETERMINATION
(1987 COE Wetlands Delineation Manual)

| | |
|---|---|
| Project/Site: OCEAN PINES SECTION 15B LOT 64 | Date: 8/7/02 |
| Applicant/Owner: ROBERT J. SHORT | County: WORCESTER |
| Investigator: K.W. REDINGER / ARM, INC. | State: MARYLAND |

| | | |
|---|---|---|
| Do Normal Circumstances exist on the site? | Yes No | Community ID: UPLANDS |
| Is the site significantly disturbed (Atypical Situation)? | Yes No | Transect ID: |
| Is the area a potential Problem Area? | Yes No | Plot ID: 3 |
| (If needed, explain on reverse.) | | |

## VEGETATION

| Dominant Plant Species | Stratum | Indicator | Dominant Plant Species | Stratum | Indicator |
|---|---|---|---|---|---|
| 1. LOBLOLLY PINE | T | FAC- | 9. BAYBERRY | SH | FAC |
| 2. RED MAPLE | T | FAC | 10. | | |
| 3. SWEET GUM | T | FAC | 11. | | |
| 4. EASTERN RED CEDAR | T | FACU | 12. | | |
| 5. RED MAPLE | SA | FAC | 13. | | |
| 6. SWEET GUM | SA | FAC | 14. | | |
| 7. BLACK CHERRY | SA | FACU | 15. | | |
| 8. SASSAFRAS | SA | FACU- | 16. | | |

Percent of Dominant Species that are OBL, FACW or FAC
(excluding FAC-).          56% (5/9)

Remarks: PINE AND MIXED HARDWOOD FOREST IN EASTERN PORTION OF SITE
TREES UP TO 15" DBH. SPARCE UNDERSTORY

## HYDROLOGY

| | |
|---|---|
| ___ Recorded Data (Describe in Remarks):<br>   ___ Stream, Lake, or Tide Gauge<br>   ___ Aerial Photographs<br>   ___ Other<br>X No Recorded Data Available | Wetland Hydrology Indicators:<br>  Primary Indicators:<br>   ___ Inundated<br>   ___ Saturated in Upper 12 Inches<br>   ___ Water Marks<br>   ___ Drift Lines<br>   ___ Sediment Deposits<br>   ___ Drainage Patterns in Wetlands |
| Field Observations:<br><br>Depth of Surface Water: ⊘ (in.)<br><br>Depth to Free Water in Pit: > 62 (in.)<br><br>Depth to Saturated Soil: > 62 (in.) | Secondary Indicators (2 or more required):<br>   ___ Oxidized Root Channels in Upper 12 Inches<br>   ___ Water-Stained Leaves<br>   ___ Local Soil Survey Data<br>   ___ FAC-Neutral Test<br>   ___ Other (Explain in Remarks) |

Remarks: LANDSCAPE POSITION SUMMIT/OLD FILL PILES. NO EVIDENCE
OF WETLAND HYDROLOGY

SOILS DSP#3 - UPLANDS

| | |
|---|---|
| Map Unit Name (Series and Phase): FALLSINGTON SANDY LOAM | Drainage Class: PD |
| Taxonomy (Subgroup): TYPIC OCHRAQUULT | Field Observations Confirm Mapped Type? (Yes) No |

**Profile Description:**

| Depth (inches) | Horizon | Matrix Color (Munsell Moist) | Mottle Colors (Munsell Moist) | Mottle Abundance/Contrast | Texture, Concredions, Structure, etc. |
|---|---|---|---|---|---|
| 0-14 | FILL | 10YR4/3 | NONE | NONE | LS |
| 14-32 | FILL | 10YR4/3 | 2.5Y7/1 7.5YR5/8 | C2D C2D | LS |
| 32-42 | Ab | 2.5Y4/1 | 5YR5/8 | C1D | SL |
| 42-48 | Btg | 2.5Y7/1 | 5YR5/8 | C2P | SCL |
| | | | | | |
| | | | | | |

**Hydric Soil Indicators:**

____ Histosol
____ Histic Epipedon
____ Sulfidic Odor
____ Aquic Moisture Regime
____ Reducing Conditions
____ Gleyed or Low-Chroma Colors

____ Concretions
____ High Organic Content in Surface Layer in Sandy Soils
____ Organic Streaking in Sandy Soils
____ Listed on Local Hydric Soils List
____ Listed on National Hydric Soils List
____ Other (Explain in Remarks)

Remarks: OLD FILL PILES ±3' IN HEIGHT. NO HYDRIC SOIL INDICATORS PRESENT IN FILL. FALLSINGTON BENEATH FILL

## WETLAND DETERMINATION

| | | | |
|---|---|---|---|
| Hydrophytic Vegetation Present? | (Yes) No (Circle) | | (Circle) |
| Wetland Hydrology Present? | Yes (No) | Is this Sampling Point Within a Wetland? | Yes (No) |
| Hydric Soils Present? | Yes (No) | | |

Remarks: FILL PILES IN EASTERN PORTION OF SITE. AGE OF TREES INDICATE THAT FILL HAS BEEN PRESENT ON SITE FOR 20+ YEARS

Approved by HQUSACE 3/92

# APPENDIX "C"

## Site Photos

*Ocean Pines Section 15B Lot 64*

*Tax Map 21 - Parcel 68, Worcester County, Maryland*

*Applicant: Robert J. Short*



**Photo 1:** Non-tidal wetland depression, view facing east from wetland flag 21 – 08/07/02



**Photo 2:** Tidal wetland line along the northern property boundary with unnamed canal off Manklin Creek. View facing east from Wetland Flag 1A – 08/07/02

# *Atlantic Resource Management, Inc.*

*3 Division Street / Onancock, Virginia 23417*
*Phone: (757) 789-3383 / Fax: (757) 789-3568 / e-mail: arm@esva.net*



October 8, 2002

Maryland Department of the Environment
Water Management Administration
Regulatory Services Coordination Office
2500 Broening Highway
Baltimore, MD 21224

**Re:**   Jurisdictional Wetland Determination, Ocean Pines Section 15B Lot 64
Tax Map 21 - Parcel 68, Worcester County, Maryland
Applicant: Robert J. Short

To Whom It May Concern:

On behalf of our client, Robert J. Short, Atlantic Resource Management, Inc. and D&D Civil and
Environmental Engineering, Inc., is contacting your office to request a jurisdictional determination within
Ocean Pines Section 15B Lot 64 (Tax Map 21 - Parcel 68), in Worcester County, Maryland.
The development of a single-family home with attendant features is proposed within the parcel.

A delineation of wetland boundaries was previously conducted within the subject parcel (as depicted on the
attached Wetland Delineation Plan), and received jurisdictional approval from the Baltimore District U.S.
Army Corps of Engineers on November 13, 1995 (CENAB-OP-RS (Ocean Pines L.L.C./Balfour Holdings)
– 9465–634-1- further Section 15B – 94-6727-1).

Enclosed you will find 5 copies of a joint application for jurisdictional wetland determination, wetland
delineation report, and wetland delineation plans.

Please call me with any questions you may have.

Sincerely,
For Atlantic Resource Management, Inc.,

Kenneth W. Redinger
President

Enclosures (5 copies each):       Joint Application for Jurisdictional Determination
Wetland Delineation Report
Wetland Delineation Plans

# EXHIBIT 2

Maryland Department of Environment - WMA
REGULATORY SERVICES COORDINATION OFFICE
1800 Washington Blvd
Baltimore, MD 21230

October 11, 2002

D & D CIVIL & ENV ENGINEERING INC
ATTN:  NICHOLAS DEGENNARD
PO BOX 3353
OCEAN CITY   MD  21843-


Project Name: SHORT, ROBERT J/JD

Tracking No.: 200360262
Application Received: October 11, 2002
County:      Worcester

Dear Mr. DeGennard:

    The Regulatory Services Coordination Office of the Water
Management Administration has received your Joint Application for
construction in a floodplain, waterway, tidal, or nontidal area
in Maryland.

    Your application will be forwarded to the U.S. Army Corps of
Engineers who will perform the jurisdictional determination you
have requested.

    If you have any questions please give us a call at
(410)537-3762 (Baltimore/Annapolis) or 1-800-876-0200.

                    Sincerely,


                    Regulatory Services Coordination
                    Staff

# EXHIBIT 3

Nicholas De Gennaro Ph.D. PE
D&D Civil & Environmental Engineering
Box 3353
Ocean City MD 21843

March 14 2003

COE
Woody Francis
Box 1715
Baltimore MD 21203

RE: Joint Application For  JD
Tracking No: 20036062

Dear Mr Francis:

I am sending you the information we discussed over the telephone on 10 March 13, 2003. It is
documentation on the change in impacts to Section 15B. As I mentioned there was a net decrease impacts
of approximately one and a half acres. Pleases consider this when reviewing the application for
modification to lot 64.

Regards,

*Nicholas De Gennaro*

Nicholas De Gennaro

Cc  Steve Dawson

25.96   13:59   ☎1 302 436 1755   BUNTING MURRAY   ⟶ FRANK LYNCH   ☒005
30.96   18:02   ☎410 289 3458   WHITLOCK ASSOC   ⟶ SOULE   ☒005/008

MODIFICATION OF AUTHORIZATION          PERMIT NUMBER:   199465634
PAGE 2 OF 2

All modifications are as shown on the attached site plans drawn by Larry T. Whitlock
& Associates, Inc., Sheets 34, 35, 38, 39 and 15B Utility right of way by Soulé and
Assoc.  All other parts of the site plan remain the same.

THIS MODIFICATION SHALL BE CONSIDERED AS PART OF NONTIDAL WETLANDS
& WATERWAYS PERMIT NUMBER 199465634.   ALL OTHER CONDITIONS AND
ELEMENTS OF THE AUTHORIZATION REMAIN IN EFFECT.

 

 

Gary T. Setzer
Program Administrator
Wetlands and Waterways Program

Attachments:   Site Plans

cc:   Walter Washington, Jr. - U.S. Army Corps of Engineers
      Larry Whitlock - Larry T. Whitlock & Assoc. Inc.
      Marley C. Lewis - WRA Inspection & Compliance Program
      Terrance W. Clark - Nontidal Wetlands and Waterways Division

04-30-96   18:01   ☎410 289 3458        BUNTING MURRAY        ㅋㅋㅋ FRANK LYNCH        ☒004
                                           WHITLOCK ASSOC       ㅋㅋㅋ SOULE          ☒004-008

# STATE OF MARYLAND
## DEPARTMENT OF THE ENVIRONMENT
### WATER MANAGEMENT ADMINISTRATION

## MODIFICATION OF AUTHORIZATION

RECV'D
DEC 1 8 1995

PERMIT NUMBER: 199465634
Includes:
    94-NT-0557/199467262          94-NT-0671/199467274
    94-NT-0668/199467265          94-NT-0672/199467278
    94-NT-0669/199467268          94-NT-0673/199467291
    94-NT-0670/199467271

EFFECTIVE DATE:     December 14, 1995
EXPIRATION DATE:   August 31, 1998
AUTHORIZED PERSON: Balfour Holdings Inc./
                       c/o Ray Smith
                       1180 Sunrise Valley Dr.
                       Reston, VA  22091

IN ACCORDANCE WITH DEPARTMENT OF THE ENVIRONMENT ARTICLE §5-503(A) AND §5-906(A), ANNOTATED CODE OF MARYLAND (1990 REPLACEMENT VOLUME), COMAR 08.05.03.12E AND 08.05.04.11, NONTIDAL WETLANDS & WATERWAYS PERMIT NUMBER 199465634, ISSUED TO __Balfour Holdings Inc.__ ("AUTHORIZED PERSON"), IS HEREBY MODIFIED BY THE WATER MANAGEMENT ADMINISTRATION ("ADMINISTRATION") AS DESCRIBED BELOW:

For Section 15B only:

    To redesign the utilities right-of-way, to eliminate a portion of Bayou Court roadway and revise a portion of Port Arthur Court to a private drive. These changes will reduce forested nontidal wetland impacts and nontidal buffer impacts as follows:

### IMPACT DELETIONS

| | |
|---|---|
| Row in 25' buffer | 359 Sq. ft./.81 Acres |
| Row in nontidal wetlands | 25,233 Sq. ft./.58 Acres |
| Utility in 25' buffer | 19,586 Sq. ft./.45 Acres |
| Utility in nontidal wetlands | 24,192 Sq. ft./.56 Acres |

### IMPACT ADDITIONS

| | |
|---|---|
| Utility in 25' buffer | 13,200 Sq. ft./.30 Acres |
| Utility in nontidal wetlands | 5,200 Sq. ft./.12 Acres |
| Access in 25' buffer | 6,875 Sq. ft./.16 Acres |

### NET DIFFERENCE

| | |
|---|---|
| Reduction in permanent impacts | |
| Road right of way in NTW | .42 Acres |
| Permanent total (reduction) | .42 Acres |
| Reduction in temporary impacts | |
| Utilities in NTW | .44 Acres |
| Road right of way in NTW buffers | .81 Acres |
| Utilities in NTW buffers | .15 Acres |
| Temporary total (reduction): | 1.40 Acres |

Telephone:  (410) 543-6703
TTD for the Deaf: 410-974-3683

'25/96   15:58   ☎1 302 456 1755     BUNTING MURRAY   +++ FRANK LYNCH   @003
04/30/96   18:00   ☎410 288 3458     WHITLOCK ASSOC    +++ SOULE         Ø003/008

# STATE OF MARYLAND
## DEPARTMENT OF THE ENVIRONMENT
## WATER MANAGEMENT ADMINISTRATION

## MODIFICATION OF AUTHORIZATION

PERMIT NUMBER: 199465634

| Includes: | | |
|---|---|
| 94-NT-0557/199467262 | 94-NT-0671/199467274 |
| 94-NT-0668/199467265 | 94-NT-0672/199467278 |
| 94-NT-0669/199467268 | 94-NT-0673/199467291 |
| 94-NT-0670/199467271 | |

EFFECTIVE DATE:       December 14, 1995
EXPIRATION DATE:     August 31, 1998
AUTHORIZED PERSON:   Balfour Holdings Inc./
                     c/o Ray Smith
                     1180 Sunrise Valley Dr.
                     Reston, VA 22091.

IN ACCORDANCE WITH DEPARTMENT OF THE ENVIRONMENT ARTICLE §5-503(A) AND §5-906(A), ANNOTATED CODE OF MARYLAND (1990 REPLACEMENT VOLUME), COMAR O8.05.03.12E AND O8.05.04.11, NONTIDAL WETLANDS & WATERWAYS PERMIT NUMBER 199465634, ISSUED TO ___Balfour Holdings Inc.___ ("AUTHORIZED PERSON"), IS HEREBY MODIFIED BY THE WATER MANAGEMENT ADMINISTRATION ("ADMINISTRATION") AS DESCRIBED BELOW:

For Section 15B only:
   To redesign the utilities right-of-way, to eliminate a portion of Bayou Court roadway and revise a portion of Port Arthur Court to a private drive. These changes will reduce forested nontidal wetland impacts and nontidal buffer impacts as follows:

| IMPACT DELETIONS | |
|---|---|
| Row in 25' buffer | 35,359 Sq. ft./.81 Acres |
| Row in nontidal wetlands | 25,233 Sq. ft./.58 Acres |
| Utility in 25' buffer | 19,586 Sq. ft./.45 Acres |
| Utility in nontidal wetlands | 24,192 Sq. ft./.56 Acres |

| IMPACT ADDITIONS | |
|---|---|
| Utility in 25' buffer | 13,200 Sq. ft./.30 Acres |
| Utility in nontidal wetlands | 5,200 Sq. ft./.12 Acres |
| Access in 25' buffer | 6,875 Sq. ft./.16 Acres |

| NET DIFFERENCE | |
|---|---|
| Reduction in permanent impacts | |
| Road right of way in NTW | .42 Acres |
| Permanent total (reduction) | .42 Acres |
| Reduction in temporary impacts | |
| Utilities in NTW | .44 Acres |
| Road right of way in NTW buffers | .81 Acres |
| Utilities in NTW buffers | .15 Acres |
| Temporary total (reduction): | 1.40 Acres |



**DEPARTMENT OF THE ARMY**
BALTIMORE DISTRICT, U.S. ARMY CORPS OF ENGINEERS
P.O. BOX 1715
BALTIMORE, MD 21203-1715

December 22, 1995

REPLY TO
ATTENTION OF

Operations Division

Subject:   CENAB-OP-RS(OCEAN PINES L.L.C. - BALFOUR HOLDINGS, INC.)
           94-65634-1
           CENAB-OP-RS(SECTION 15B)94-67271-1

Balfour Holdings, Inc.
c/o Mr. Lawrence T. Whitlock
Lawrence T. Whitlock Assoc., Inc.
3409 Coastal Highway
Ocean City, Maryland   21842

*CENAB - OP - RS - OPLC*
*Blafou how the*
*94-65 063 "1-1*
*153*
*94 - 67271 -1*

Gentlemen:

I am replying to your agent's letters dated December 8 and
18, 1995, requesting modification to the work authorized on
November 13, 1995, by the subject Department of the Army permits
referenced above, in Ocean Pines, Worcester County, Maryland.

Specifically, you have requested permit modifications to the
authorized work shown on pages 36, 37, and 40 of permit 94-65634-1
and pages 7, 8, and 11 of permit 94-67271-1.  These modifications
will result in a reduction of permanent non-tidal wetland impacts
from approximately 41,263 square feet to approximately 37,853 square
feet associated with road crossings and a reduction of temporary
non-tidal wetland impacts from approximately 70,562 square feet
to approximately 53,570 square feet associated with utility line
crossings.  In addition, your requested modification includes
construction of a 24-foot wide access and utility easement within
1,980 square feet of non-tidal wetlands, which was not previously
authorized.  Therefore, collectively, these modifications will
result in a reduction of permanent and temporary non-tidal wetland
impacts by approximately 22,382 square feet (0.51 acres).

Accordingly, we have determined, as a result of our reevaluation
of the authorized work and the requested modifications, that the
proposed work, as modified, is not contrary to the public interest.
Therefore, the modifications are approved, as shown by revised plans
dated December 18, 1995 sheets 36, 37, and 40 of 92 for permit
94-65634-1 and by sheets 7, 8, and 11 of 48 for permit 94-67271-1,
copies enclosed.  Consequently, these revised plans supersede the
plans and work previously authorized by the Corps on November 13,
1995.

2

All other aspects of the work as originally authorized and conditioned remain unchanged. Any required State and local authorizations must also be secured prior to commencement of the authorized work as modified herein.

If you have any questions regarding this matter, please contact Mr. Woody Francis, of this office, at (410) 962-5689.

By Authority of the Secretary of the Army:

Issued for and in behalf of          Walter Washington, Jr.
Colonel Randall R. Inouye, P.E.      Chief, Eastern Shore Section
District Engineer

Enclosures

# EXHIBIT 4

ADKINS, POTTS & SMETHURST, LLP

ATTORNEYS AT LAW

ONE PLAZA EAST, SIXTH FLOOR

100 EAST MAIN STREET

(MAILING ADDRESS)

POST OFFICE BOX 4247

SALISBURY, MARYLAND 21803-4247

E. DALE ADKINS, JR. (1915-1982)
CHARLES J. POTTS (1910-1994)

RAYMOND S. SMETHURST, JR.
ROBERT B. TAYLOR

S. JAMES SARBANES

PHONE: 410-749-0161
FAX: 410-749-5021

February 10, 2004

Mr. Woody Frances
U. S. Army Corps of Engineers
P. O. Box 1715
Baltimore, MD 21203

Re:     Robert J. Short
         Ocean Pines Section 15B, Lot 64
         Tax Map 21, Parcel 68
         Worcester County, Maryland
         Tracking No. 20036062

Dear Mr. Frances:

I am writing on behalf of Robert J. Short, who on October 8, 2002, applied for a jurisdictional determination to modify wetland boundaries on the above identified property. The request was initially forwarded by Atlantic Resource Management, Inc. to the Maryland Department of the Environment on October 8, 2002 (copy of transmitting letter attached). MDE then forwarded the request to your office as evidenced by its letter of October 11, 2002 (copy attached). The last communication in Mr. Short's file is a letter to you from Nicholas DeGennaro dated March 14, 2003 (copy attached).

I would appreciate it if you could advise me of the status of this JD request and a time frame for its resolution.

Very truly yours,

R. S. Smethurst, Jr.

RSS/bh
enc.
cc:     Robert J. Short

M:\files\RSS\Short\LtrFrances21188

# EXHIBIT 5



# OBERMAYER
REBMANN MAXWELL & HIPPEL LLP

*Attorneys At Law*
**Steven D. Urgo**
215-665-3122
steven.urgo@obermayer.com
Member NY, NJ & PA Bars

One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
215-665-3000
Fax  215-665-3165
www.obermayer.com

**VIA EMAIL AND
FIRST CLASS MAIL**

January 16, 2007

US Army, Corps of Engineers
Baltimore District
PO Box 1715
Baltimore, MD 21203-1715

<u>Attention</u>:    Michael S. Fraer

Re:    **JD Determination – Tracking No. 20036062**

Dear Mr. Fraer:

Thank you for speaking with me today.  As discussed, this is a request made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, *et seq*., as amended.

My firm represents Mr. James R. Short in connection with his joint application for a jurisdictional determination on a parcel of property located in Worchester County, Maryland. The JD application was first submitted to the U.S. Army Corps of Engineers by the Maryland Department of Environment on or about October 11, 2002.  The JD application concerns a parcel located in Ocean Pines Section 15B, Lot 64, Tax Map 21, Parcel 68 (the "Parcel").

We hereby request that you provide us with copies of all documents in the possession, custody or control of the Corps with respect to the Parcel, including but not limited to any and all wetlands delineations, conservation easements, correspondence generated by the Corps in response to the JD application, and any internal memorandum or other documents generated by the Corps in connection with the JD application.

To the extent there are charges associated with providing copies of the Corps file on this matter, please advise us of the amount of any fees required for this information pursuant to FOIA.  We will pay these fees upon request.  Please call if you have any questions.

Very truly yours,

Steven D. Urgo

SDU/dct

## Over a Century of Solutions

4120501

Philadelphia    Harrisburg    Pittsburgh    Cherry Hill    Vineland    Wilmington

Michael S. Fraer
January 16, 2007
Page 2 of 2


bcc:    Joseph J. McGovern, Esq.
        Nicholas De Gennaro, PhD., P.E. (via email)

4120501

# Exhibit 6

# OBERMAYER
REBMANN MAXWELL & HIPPEL LLP

*Attorneys At Law*
**Steven D. Urgo**
215-665-3122
steven.urgo@obermayer.com
Member NY, NJ & PA Bars

One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
215-665-3000
Fax 215-665-3165
www.obermayer.com

**VIA TELECOPY AND**
**FIRST CLASS MAIL**

January 18, 2007

Headquarters
US Army Corps of Engineers
441 G. Street, NW,
Washington, DC 20314-1000

Attention:    Meg Smith

Re:    **JD Determination – Tracking No. 20036062**

Dear Ms. Smith:

Thank you for speaking with me today. My firm represents Mr. James R. Short in connection with his joint application for a jurisdictional determination on a parcel of property located in Worchester County, Maryland. The JD application was first submitted to the U.S. Army Corps of Engineers by the Maryland Department of Environment on or about October 11, 2002. A copy of the letter forwarding the application from DOE to the Corps is enclosed. The JD application concerns a parcel located in Ocean Pines Section 15B, Lot 64, Tax Map 21, Parcel 68.

Per your request, enclosed is a copy of the application for the JD, and an October 8, 2002 letter from Atlantic Resource Management, Inc. to the Maryland DOE. This letter accompanied the application to the DOE. The last enclosure is a February 10, 2004 letter that requested a status on the JD from the Baltimore District.

After you have had a chance to review these materials, please contact me to discuss. Thank you for your assistance in this matter.

Very truly yours,

Steven D. Urgo

SDU/dct
Enclosure

# Over a Century of Solutions

# Atlantic Resource Management, Inc.

### 3 Division Street / Onancock, Virginia 23417
### Phone: (757) 789-3383 / Fax: (757) 789-3568 / e-mail: arm@esva.net

October 8, 2002

Maryland Department of the Environment
Water Management Administration
Regulatory Services Coordination Office
2500 Broening Highway
Baltimore, MD 21224

**Re:**    Jurisdictional Wetland Determination, Ocean Pines Section 15B Lot 64
             Tax Map 21 - Parcel 68, Worcester County, Maryland
             Applicant: Robert J. Short

To Whom It May Concern:

On behalf of our client, Robert J. Short, Atlantic Resource Management, Inc. and D&D Civil and Environmental Engineering, Inc., is contacting your office to request a jurisdictional determination within Ocean Pines Section 15B Lot 64 (Tax Map 21 - Parcel 68), in Worcester County, Maryland.
The development of a single-family home with attendant features is proposed within the parcel.

A delineation of wetland boundaries was previously conducted within the subject parcel (as depicted on the attached Wetland Delineation Plan), and received jurisdictional approval from the Baltimore District U.S. Army Corps of Engineers on November 13, 1995 (CENAB-OP-RS (Ocean Pines L.L.C./Balfour Holdings) – 9465–634-1- further Section 15B – 94-6727-1).

Enclosed you will find 5 copies of a joint application for jurisdictional wetland determination, wetland delineation report, and wetland delineation plans.

Please call me with any questions you may have.

Sincerely,
For Atlantic Resource Management, Inc.,

Kenneth W. Redinger
President

Enclosures (5 copies each):      Joint Application for Jurisdictional Determination
                                 Wetland Delineation Report
                                 Wetland Delineation Plans

# Wetland Delineation Report

# For Ocean Pines Section 15B Lot 64

# Tax Map 21 - Parcel 68

# Worcester County, Maryland

### October 8, 2002

### *Prepared For:*

Robert J. Short
30 Harlan Trace
Berlin, Maryland 21811
(410) 641-8591

### *Prepared By:*

D&D Civil and Environmental
Engineering, Inc.
P.O. Box 3353
Ocean City, Maryland 21843
Phone: (410) 208-0282

Atlantic Resource Management, Inc.
3 Division Street
Onancock, Virginia 23417
Phone: (757) 789-3383

### *Submitted By:*

Nicholas DeGennaro, Ph.D., PE
D&D Civil and Environmental Engineering, Inc.

Kenneth W. Redinger, President
Atlantic Resource Management, Inc.

*Wetland Delineation Report*
*Ocean Pines Section 15B Lot 64*
*Worcester County, Maryland*
*Applicant: Robert J. Short*

## TABLE OF CONTENTS

INTRODUCTION ................................................................. 1

SITE CHARACTERIZATION ............................................. 1

INVESTIGATION METHODS ........................................... 1

INVESTIGATION RESULTS ............................................. 2

SUMMARY AND CONCLUSIONS .................................... 3

## APPENDICES

A. Site Maps

> Figure 1: Vicinity Map

> Figure 2: U.S.G.S. Quadrangle

> Figure 3: Soil Survey

B. Wetland Data Sheets

C. Site Photos

## INTRODUCTION

The applicant, Robert J. Short, has retained Atlantic Resource Management, Inc. and D&D Civil and Environmental Engineering, Inc. to delineate jurisdictional wetlands within Lot 64 of Section 15B of the Ocean Pines subdivision (Parcel 68 - Tax Map 21), in Worcester County, Maryland. The parcel is located on the northeast corner of the intersection of Port Arthur Court and Ocean Parkway within Ocean Pines (Vicinity Map, Figure 1, Appendix "A"). The development of a single-family home with attendant features is proposed.

## SITE CHARACTERIZATION

**LAND USE:** The 30,853 square foot parcel consists of mid-succession pine and mixed hardwood forest. The parcel borders an unnamed canal off Manklin Creek. Adjacent land use is residential development.

**TOPOGRAPHY AND HYDROLOGY:** The U.S. Geological Survey Berlin quadrangle (7.5-minute series) identifies site elevations of less than 5 feet above sea level, which generally decrease northward to the canal (Figure 2, Appendix "A"). Fill material is present in the northeastern portion of the site, allowing for a 2 feet rise in elevation where present. An excavated ditch, with no hydrologic connections to the adjacent canal, is present in the southern portion of the site.

**SOILS:** Sheet 11 of the Soil Survey of Worcester County, Maryland identifies poorly drained Fallsington sandy loam (Fa) within the subject parcel. The Fallsington series is present on the Natural Resource Conservation Service list of hydric soils.

**100-YEAR FLOODPLAINS:** As identified on the Federal Emergency Management Agency's (FEMA) Flood Insurance Rate Map Number 240083 0025 A (February 15, 1979), the parcel is located within Flood Zone "A7" (areas of special flood hazard, inundated by 100-year flood).

## INVESTIGATION METHODS

A routine level field investigation was conducted on August 7, 2002 by Kenneth W. Redinger of Atlantic Resource Management, Inc. to delineate wetlands for the purpose of Section 404 of the Clean Water Act. The investigation was conducted in accordance with techniques and criteria provided in the 1987 Corps of Engineers Wetland Delineation Manual (in conjunction with regulatory guidance letters released on October 7, 1991, and March 6, 1992) and the Code of Maryland Regulations Title 26, Subtitles 23 and 24. Information regarding vegetation, hydrology, and soils was recorded on Routine Wetland Determination Data Forms (Appendix "B"). Wetland boundaries were identified in the field with consecutively numbered pink pin flags, and surveyed by Frank G. Lynch, Jr. and Associates, Inc. (Wetland Delineation Plan, dated August 29, 2002 and revised September 27, 2002, attached). Vegetation communities were characterized using a 5-stratum approach, with tree, sapling, shrub, woody vine, and herbaceous species recorded in descending order of abundance. Visual estimates of abundance and canopy position were taken at each sampling point, with individuals in discernible view of plot center considered. The wetland indicator status of plant species was confirmed using the 1988 National List Of Plant Species That Occur In Wetlands: Northeast (Region 1). The hydrology parameter was evaluated by visual observation of inundation and/or soil saturation during the field investigation. Soil descriptions were taken at each sampling point using a 3.25-inch diameter hand bucket auger. Information regarding soil horizon depth, matrix color, redoximorphic features, and texture was recorded. Soil colors were determined using the Munsell Color Chart (2000). Soils were described in accordance with criteria found in the U.S. Department of Agriculture Soil Survey Manual (1993).

1

## INVESTIGATION RESULTS

A total of 4,299 square feet of forested non-tidal wetlands were identified within the 30,853 square foot parcel. The remaining 26,554 square feet were classified as uplands. Three representative data points were taken to describe existing site conditions (Appendix "B"). Data Point 1 describes wetlands, and Data Points 2 and 3 describe uplands. Final authority as to the accuracy of this delineation and the jurisdictional status of wetlands within the parcel rests with the Baltimore District U.S. Army Corps of Engineers.

## WETLANDS (Data Point 1)

Wetlands identified during the investigation were characterized by the presence of a hydrophytic vegetation community, evidence of seasonal inundation, and hydric soils. A dense stand of *Phragmites* dominates the central portion of the non-tidal wetland depression, with woody vegetation limited to a narrow fringe along the wetland/upland boundary (Photo 1, Appendix "C"). Dominant canopy species include loblolly pine (*Pinus taeda*, FAC-), red maple (*Acer rubrum*, FAC), and sweet gum (*Liquidamber styraciflua*, FAC). Common understory species include red maple, sweet gum, black gum (*Nyssa sylvatica*, FAC), bayberry (*Myrica pennsylvatica*, FAC), high-tide bush (*Baccharis halimifolia*, FACW), and poison ivy (*Toxicodendron radicans*, FAC). Herbaceous species include phragmites (*Phragmites spp.*, FACW), swamp smartweed (*Polygonum hydropiperoides*, OBL), switchgrass (*Panicum virgatum*, FAC), virginia wild rye (*Elymus virginicus*, FACW-), and American germander (*Teucrium canadense*, FACW-). The hydrophytic vegetation parameter was confirmed by 93% (13/14) of the plant species present having a wetland indicator status of FAC, FACW, or OBL.

Depth to groundwater was 52 inches from the surface during the investigation. Evidence of seasonal inundation was observed throughout.

The hydric soil parameter was confirmed by the presence of a low chroma matrix (10YR 6/1) with redox concentrations (7.5YR 5/8) immediately beneath the "A" horizon. These soils are similar to the poorly drained Fallsington series, as identified in the soil survey.

Wetland line "A" on the attached site plan depicts tidal wetland limits, and the northern property boundary adjacent to the canal (Photo 2, Appendix "C"). At high tide, water levels within the canal were approximately 12 inches below the plane of the adjacent soil surface.

## UPLANDS (Data Points 2 and 3)

Approximately 26,554 square feet of the subject parcel was classified as uplands. While a FAC dominated vegetation community was present in these areas, no evidence of wetland hydrology or hydric soils was observed.

Data Point 2 represents pine and mixed hardwood forest in the western portion of the site. Dominant canopy species are loblolly pine, red maple, sweet gum, and black cherry (*Prunus serotina*, FACU), (Photo 3, Appendix "C"). Common understory species include sweet gum, black cherry, red maple, bayberry, poison ivy and common green briar (*Smilax rotundifolia*, FAC). The hydrophytic vegetation parameter was confirmed by 70% (7/10) of the species present having a wetland indicator status of OBL, FACW, or FAC.

Groundwater levels were greater than 62 inches from the surface during the investigations. The relative landscape position is a broad backslope and an upper toe slope. No evidence of wetland hydrology was observed.

Based on morphological interpretations, depth to seasonal saturation is 19 inches or greater. No hydric soil indicators were present in the top 18 inches of the profile. Soils are moderately well drained, and similar to the Woodstown series.

Approximately 70 linear feet of drainage ditch is located in the southern portion of the site. This drainage feature is constructed through uplands and has no surface water connections to the adjacent canal.

Data Point 3 represents pine and mixed hardwood forest in the northeastern portion of the site (Photo 4, Appendix "C"). These uplands are isolated from the remaining parcel by the non-tidal wetland depression. Dominant canopy species are loblolly pine, red maple, sweet gum, and eastern red cedar (*Juniperus virginiana*, FACU). Common understory species include red maple, sweet gum, black cherry, sassafras (*Sassafras albidum*, FACU-), and bayberry. The understory is sparse throughout. The hydrophytic vegetation parameter was confirmed by 56% (5/9) of the species present having a wetland indicator status of OBL, FACW, or FAC.

Groundwater levels were greater than 62 inches from the surface during the investigations. No evidence of wetland hydrology was observed.

Approximately 2 feet of fill material is present in the northeastern portion of the site. Based on the age of existing forest cover, fill placement occurred at least 25 years prior to the current investigation. Soils beneath the fill material are similar to poorly drained Fallsington sandy loam, as identified in the soil survey.

## SUMMARY AND CONCLUSIONS

A total of 4,299 square feet of forested non-tidal wetlands were identified within the 30,853 square foot parcel. The remaining 26,554 square feet were classified as uplands.

Wetlands identified during the investigation were characterized by the presence of a hydrophytic vegetation community, evidence of seasonal inundation, and hydric soils.

While a FAC dominated vegetation community is present within areas classified as uplands, no evidence of wetland hydrology or hydric soils was observed.

The drainage ditch located in the southern portion of the site is a manmade feature constructed through uplands, with no surface water connections to the adjacent canal, and is therefore not regulated under section 404 of the Clean Water Act.

Final authority as to the accuracy of this delineation and the jurisdictional status of wetlands within the parcel rests with the Baltimore District U.S. Army Corps of Engineers.

3



**FIGURE 1 – VICINITY MAP**
Ocean Pines Section 15B Lot 64
Tax Map 21 – Parcel 68
Worcester County, Maryland
Applicant: Robert J. Short



# APPENDIX "B"

## Field Data Sheets

*Ocean Pines Section 15B Lot 64*

*Tax Map 21 - Parcel 68, Worcester County, Maryland*

*Applicant: Robert J. Short*

DATA FORM
ROUTINE WETLAND DETERMINATION
(1987 COE Wetlands Delineation Manual)

Project/Site: OCEAN PINES SECTION 15B LOT 64

Applicant/Owner: ROBERT J. SHORT

Investigator: K.W. REDINGER / ARM, INC.

Date: 8/7/02
County: WORCESTER
State: MARYLAND

Do Normal Circumstances exist on the site? (Yes) No
Is the site significantly disturbed (Atypical Situation)? Yes (No)
Is the area a potential Problem Area? Yes No
    (If needed, explain on reverse.)

Community ID: WETLANDS
Transect ID:
Plot ID: 1

## VEGETATION

| Dominant Plant Species | Stratum | Indicator | Dominant Plant Species | Stratum | Indicator |
|---|---|---|---|---|---|
| 1. LOBLOLLY PINE | T | FAC- | 9. POISON IVY | WV | FAC |
| 2. RED MAPLE | T | FAC | 10. P. HYDROPIPEROIDES | H | OBL |
| 3. SWEET GUM | T | FAC | 11. PANICUM VIRGATUM | H | FAC |
| 4. RED MAPLE | SA | FAC | 12. ELYMUS VIRGINICUS | H | FACW- |
| 5. SWEETGUM | SA | FAC | 13. TEUCRIUM CANADENSE | H | FACW- |
| 6. BLACK GUM | SA | FAC | 14. PHRAGMITES | H | FACW |
| 7. BAYBERRY | SH | FAC | 15. | | |
| 8. BACCHARIS | SH | FACW | 16. | | |

Percent of Dominant Species that are OBL, FACW or FAC
(excluding FAC-).    93% (13/14)

Remarks: CENTRAL AREA DOMINATED BY PHRAGMITES WITH WOODY VEG LIMITED TO WETLAND/UPLAND BOUNDARY

## HYDROLOGY

___ Recorded Data (Describe in Remarks):
    ___ Stream, Lake, or Tide Gauge
    ___ Aerial Photographs
    ___ Other
X No Recorded Data Available

Field Observations:

Depth of Surface Water: Ø (in.)

Depth to Free Water in Pit: 52 (in.)

Depth to Saturated Soil: 44 (in.)

Wetland Hydrology Indicators:
Primary Indicators:
    ___ Inundated
    ___ Saturated in Upper 12 Inches
    ___ Water Marks
    ___ Drift Lines
    ___ Sediment Deposits
    ___ Drainage Patterns in Wetlands
Secondary Indicators (2 or more required):
    ___ Oxidized Root Channels in Upper 12 Inches
    X Water-Stained Leaves
    X Local Soil Survey Data
    X FAC-Neutral Test
    ___ Other (Explain in Remarks)

Remarks: EVIDENCE OF SEASONAL INUNDATION THROUGHOUT. LANDSCAPE POSITION TOE SLOPE/DEPRESSION

SOILS   DSP #1 - WETLANDS

| Map Unit Name (Series and Phase): | FALLSINGTON SANDY LOAM | Drainage Class: | PD |
| --- | --- | --- | --- |
| Taxonomy (Subgroup): | TYPIC OCHRAQUULT | Field Observations Confirm Mapped Type? | (Yes) No |

**Profile Description:**

| Depth (inches) | Horizon | Matrix Color (Munsell Moist) | Mottle Colors (Munsell Moist) | Mottle Abundance/Contrast | Texture, Concretions, Structure, etc. |
| --- | --- | --- | --- | --- | --- |
| 0-7 | A | 10YR4/1 | 5YR 5/8 | F-C1D | SL |
| 7-16 | Bg | 10YR6/1 | 7.5YR5/8 | C2P | SL |
| 16-23 | BEg | 2.5Y6/1 | 7.5YR5/8 5YR5/8 | M2P C1P | SCL |
| 23-30 | Cg1 | 2.5Y7/1 | NONE | NONE | LS |
| 30-36 | Cg2 | 2.5Y7/1 | 7.5YR5/8 | M3P | LS |
| 36-48 | 2BEg | 2.5Y5/1 | NONE | NONE | SCL |

**Hydric Soil Indicators:**

____ Histosol
____ Histic Epipedon
____ Sulfidic Odor
____ Aquic Moisture Regime
____ Reducing Conditions
[X] Gleyed or Low-Chroma Colors

____ Concretions
____ High Organic Content in Surface Layer in Sandy Soils
____ Organic Streaking in Sandy Soils
[X] Listed on Local Hydric Soils List
[X] Listed on National Hydric Soils List
____ Other (Explain in Remarks)

Remarks:   HYDRIC SOIL INDICATORS CONFIRMED

**WETLAND DETERMINATION**

| | | |
| --- | --- | --- |
| Hydrophytic Vegetation Present?  (Yes) No  (Circle) | | |
| Wetland Hydrology Present?  (Yes) No | Is this Sampling Point Within a Wetland?  (Circle)  (Yes) No | |
| Hydric Soils Present?  (Yes) No | | |

Remarks:   NON-TIDAL WETLAND DEPRESSION IN EASTERN PORTION
OF SITE, DOMINATED BY PHRAGMITES.

Approved by HQUSACE 3/92

DATA FORM
ROUTINE WETLAND DETERMINATION
(1987 COE Wetlands Delineation Manual)

Project/Site: OCEAN PINES SECTION 15B LOT 64    Date: 8/7/02
Applicant/Owner: ROBERT J. SHORT    County: WORCESTER
Investigator: K.W. REDINGER / ARM, INC    State: MARYLAND

| | | |
|---|---|---|
| Do Normal Circumstances exist on the site? | (Yes) No | Community ID: UPLANDS |
| Is the site significantly disturbed (Atypical Situation)? | Yes (No) | Transect ID: |
| Is the area a potential Problem Area? | Yes (No) | Plot ID: 2 |
| (If needed, explain on reverse.) | | |

## VEGETATION

| Dominant Plant Species | Stratum | Indicator | Dominant Plant Species | Stratum | Indicator |
|---|---|---|---|---|---|
| 1. LOBLOLLY PINE | T | FAC- | 9. POISON IVY | WV | FAC |
| 2. RED MAPLE | T | FAC | 10. COMMON GREENBRIAR | WV | FAC |
| 3. SWEET GUM | T | FAC | 11. | | |
| 4. BLACK CHERRY | T | FACU | 12. | | |
| 5. SWEET GUM | SA | FAC | 13. | | |
| 6. BLACK CHERRY | SA | FACU | 14. | | |
| 7. RED MAPLE | SA | FAC | 15. | | |
| 8. BAYBERRY | SH | FAC | 16. | | |

Percent of Dominant Species that are OBL, FACW or FAC
(excluding FAC-).    70% (7/10)

Remarks: PINE AND MIXED HARDWOOD FOREST WITH OPEN
UNDERSTORY

## HYDROLOGY

___ Recorded Data (Describe in Remarks):
   ___ Stream, Lake, or Tide Gauge
   ___ Aerial Photographs
   ___ Other
X No Recorded Data Available

Field Observations:

Depth of Surface Water: 0 (in.)

Depth to Free Water in Pit: >62 (in.)

Depth to Saturated Soil: 60 (in.)

Wetland Hydrology Indicators:
  Primary Indicators:
   ___ Inundated
   ___ Saturated in Upper 12 Inches
   ___ Water Marks
   ___ Drift Lines
   ___ Sediment Deposits
   ___ Drainage Patterns in Wetlands
  Secondary Indicators (2 or more required):
   ___ Oxidized Root Channels in Upper 12 Inches
   ___ Water-Stained Leaves
   ___ Local Soil Survey Data
   ___ FAC-Neutral Test
   ___ Other (Explain in Remarks)

Remarks: No EVIDENCE OF WETLAND HYDROLOGY. LANDSCAPE
POSITION BACKSLOPE AND UPPER TOE SLOPE

SOILS *DSP #2 - UPLANDS*

| Map Unit Name (Series and Phase): | WOODSTOWN SANDY LOAM | | Drainage Class: | MWD |
|---|---|---|---|---|
| Taxonomy (Subgroup): | AQUIC HAPLUDULT | | Field Observations Confirm Mapped Type? | Yes (No) |

**Profile Description:**

| Depth (inches) | Horizon | Matrix Color (Munsell Moist) | Mottle Colors (Munsell Moist) | Mottle Abundance/Contrast | Texture, Concretions, Structure, etc. |
|---|---|---|---|---|---|
| 0-8 | A | 10YR 4/2 | NONE | NONE | SL |
| 8-19 | B1 | 10YR 5/6 | NONE | NONE | SL |
| 19-28 | B2 | 10YR 5/6 | 7.5YR 5/8  2.5Y 6/3 | C2D  M3D | SL |
| 28-38 | BC | 10YR 6/1 & 7.5YR 5/8 MIXED MATRIX | | | LS |
| | | | | | |
| | | | | | |

**Hydric Soil Indicators:**

- ___ Histosol
- ___ Histic Epipedon
- ___ Sulfidic Odor
- ___ Aquic Moisture Regime
- ___ Reducing Conditions
- ___ Gleyed or Low-Chroma Colors

- ___ Concretions
- ___ High Organic Content in Surface Layer in Sandy Soils
- ___ Organic Streaking in Sandy Soils
- ___ Listed on Local Hydric Soils List
- ___ Listed on National Hydric Soils List
- ___ Other (Explain in Remarks)

Remarks: DEPTH TO SEASONAL SATURATION 19"+ BASED ON MORPHOLOGY. MAPPED AS FALLSINGTON IN SOIL SURVEY

## WETLAND DETERMINATION

| Hydrophytic Vegetation Present? | (Yes) No (Circle) | | | (Circle) |
|---|---|---|---|---|
| Wetland Hydrology Present? | Yes (No) | | | |
| Hydric Soils Present? | Yes (No) | Is this Sampling Point Within a Wetland? | Yes (No) |

Remarks: FAC DOMINATED FOREST WITH SIGNIFICANT COMPONENT OF UPLAND SPECIES

Approved by HQUSACE 3/92

DATA FORM
ROUTINE WETLAND DETERMINATION
(1987 COE Wetlands Delineation Manual)

Project/Site: OCEAN PINES SECTION 15B LOT 64      Date: 8/7/02
Applicant/Owner: ROBERT J. SHORT                  County: WORCESTER
Investigator: K.W. REDINGER/ARM, INC.             State: MARYLAND

Do Normal Circumstances exist on the site?  (Yes) No      Community ID: UPLANDS
Is the site significantly disturbed (Atypical Situation)?  Yes (No)   Transect ID:
Is the area a potential Problem Area?  Yes (No)           Plot ID: 3
   (If needed, explain on reverse.)

## VEGETATION

| Dominant Plant Species | Stratum | Indicator | Dominant Plant Species | Stratum | Indicator |
|---|---|---|---|---|---|
| 1. LOBLOLLY PINE | T | FAC- | 9. BAYBERRY | SH | FAC |
| 2. RED MAPLE | T | FAC | 10. | | |
| 3. SWEET GUM | T | FAC | 11. | | |
| 4. EASTERN RED CEDAR | T | FACU | 12. | | |
| 5. RED MAPLE | SA | FAC | 13. | | |
| 6. SWEET GUM | SA | FAC | 14. | | |
| 7. BLACK CHERRY | SA | FACU | 15. | | |
| 8. SASSAFRAS | SA | FACU- | 16. | | |

Percent of Dominant Species that are OBL, FACW or FAC
(excluding FAC-).      56% (5/9)

Remarks: PINE AND MIXED HARDWOOD FOREST IN EASTERN PORTION OF SITE
TREES UP TO 15" DBH. SPARCE UNDERSTORY

## HYDROLOGY

___ Recorded Data (Describe in Remarks):
   ___ Stream, Lake, or Tide Gauge
   ___ Aerial Photographs
   ___ Other
X  No Recorded Data Available

Field Observations:

Depth of Surface Water:  Ø  (in.)

Depth to Free Water in Pit:  >62  (in.)

Depth to Saturated Soil:  >62  (in.)

Wetland Hydrology Indicators:
   Primary Indicators:
      ___ Inundated
      ___ Saturated in Upper 12 Inches
      ___ Water Marks
      ___ Drift Lines
      ___ Sediment Deposits
      ___ Drainage Patterns in Wetlands
   Secondary Indicators (2 or more required):
      ___ Oxidized Root Channels in Upper 12 Inches
      ___ Water-Stained Leaves
      ___ Local Soil Survey Data
      ___ FAC-Neutral Test
      ___ Other (Explain in Remarks)

Remarks: LANDSCAPE POSITION SUMMIT/OLD FILL PILES. NO EVIDENCE
OF WETLAND HYDROLOGY

SOILS DSP #3 - UPLANDS

| Map Unit Name (Series and Phase): | FALLSINGTON SANDY LOAM | | Drainage Class: | PD |
| Taxonomy (Subgroup): | TYPIC OCHRAQUULT | | Field Observations Confirm Mapped Type? | (Yes) No |

**Profile Description:**

| Depth (inches) | Horizon | Matrix Color (Munsell Moist) | Mottle Colors (Munsell Moist) | Mottle Abundance/Contrast | Texture, Concretions, Structure, etc. |
|---|---|---|---|---|---|
| 3-14 | FILL | 10YR4/3 | NONE | NONE | LS |
| 14-32 | FILL | 10YR4/3 | 2.5Y7/1 7.5YR5/8 | C2D C2D | LS |
| 32-42 | Ab | 2.5Y4/1 | 5YR5/8 | C1D | SL |
| 42-48 | Btg | 2.5Y7/1 | 5YR5/8 | C2P | SCL |
| | | | | | |
| | | | | | |
| | | | | | |

**Hydric Soil Indicators:**

| | |
|---|---|
| __ Histosol | __ Concretions |
| __ Histic Epipedon | __ High Organic Content in Surface Layer in Sandy Soils |
| __ Sulfidic Odor | __ Organic Streaking in Sandy Soils |
| __ Aquic Moisture Regime | __ Listed on Local Hydric Soils List |
| __ Reducing Conditions | __ Listed on National Hydric Soils List |
| __ Gleyed or Low-Chroma Colors | __ Other (Explain in Remarks) |

Remarks: OLD FILL PILES ± 3' IN HEIGHT. NO HYDRIC SOIL INDICATORS PRESENT IN FILL. FALLSINGTON BENEATH FILL

## WETLAND DETERMINATION

| Hydrophytic Vegetation Present? | (Yes) No (Circle) | | (Circle) |
| Wetland Hydrology Present? | Yes (No) | | |
| Hydric Soils Present? | Yes (No) | Is this Sampling Point Within a Wetland? | Yes (No) |

Remarks: FILL PILES IN EASTERN PORTION OF SITE. AGE OF TREES INDICATE THAT FILL HAS BEEN PRESENT ON SITE FOR 20± YEARS

Approved by HQUSACE 3/92

# APPENDIX "C"

## Site Photos

*Ocean Pines Section 15B Lot 64*

*Tax Map 21 - Parcel 68, Worcester County, Maryland*

*Applicant: Robert J. Short*



**Photo 1:** Non-tidal wetland depression, view facing east from wetland flag 21 – 08/07/02

**Photo 2:** Tidal wetland line along the northern property boundary with unnamed canal **off** Manklin Creek. View facing east from Wetland Flag 1A – 08/07/02

Maryland Department of Environment - WMA
REGULATORY SERVICES COORDINATION OFFICE
1800 Washington Blvd
Baltimore, MD 21230

October 11, 2002

D & D CIVIL & ENV ENGINEERING INC
ATTN:  NICHOLAS DEGENNARD
PO BOX 3353
OCEAN CITY    MD   21843-

Project Name: SHORT, ROBERT J/JD

Tracking No.: 200360262
Application Received: October 11, 2002
County:        Worcester

Dear Mr. DeGennard:

    The Regulatory Services Coordination Office of the Water
Management Administration has received your Joint Application for
construction in a floodplain, waterway, tidal, or nontidal area
in Maryland.

    Your application will be forwarded to the U.S. Army Corps of
Engineers who will perform the jurisdictional determination you
have requested.

    If you have any questions please give us a call at
(410)537-3762 (Baltimore/Annapolis) or 1-800-876-0200.

                          Sincerely,


                          Regulatory Services Coordination
                          Staff

# ADKINS, POTTS & SMETHURST, LLP

ATTORNEYS AT LAW

E. DALE ADKINS, JR. (1915-1982)
CHARLES J. POTTS (1910-1994)

RAYMOND S. SMETHURST, JR.
ROBERT B. TAYLOR
——
S. JAMES SARBANES

ONE PLAZA EAST, SIXTH FLOOR

100 EAST MAIN STREET

(MAILING ADDRESS)
POST OFFICE BOX 4247
SALISBURY, MARYLAND 21803-4247

PHONE: 410-749-0161
FAX: 410-749-5021

February 10, 2004

Mr. Woody Frances
U. S. Army Corps of Engineers
P. O. Box 1715
Baltimore, MD 21203

Re:    Robert J. Short
       Ocean Pines Section 15B, Lot 64
       Tax Map 21, Parcel 68
       Worcester County, Maryland
       Tracking No. 20036062

Dear Mr. Frances:

I am writing on behalf of Robert J. Short, who on October 8, 2002, applied for a jurisdictional determination to modify wetland boundaries on the above identified property. The request was initially forwarded by Atlantic Resource Management, Inc. to the Maryland Department of the Environment on October 8, 2002 (copy of transmitting letter attached). MDE then forwarded the request to your office as evidenced by its letter of October 11, 2002 (copy attached). The last communication in Mr. Short's file is a letter to you from Nicholas DeGennaro dated March 14, 2003 (copy attached).

I would appreciate it if you could advise me of the status of this JD request and a time frame for its resolution.

Very truly yours,

R. S. Smethurst, Jr.

RSS/bh
enc.
cc:    Robert J. Short

M:\files\RSS\Short\LtrFrances21188

```
*********************
*** FAX TX REPORT ***
*********************

TRANSMISSION OK

JOB NO.                  1920
DESTINATION ADDRESS      912027615096#3266
PSWD/SUBADDRESS
DESTINATION ID
ST. TIME                 01/18 12:30
USAGE T                  03'42
PGS.                     21
RESULT                   OK
```



# OBERMAYER
### REBMANN MAXWELL & HIPPEL LLP
*Attorneys At Law*

One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
P 215-665-3000
F 215-665-3165
www.obermayer.com

# Facsimile Transmittal

**Date:**       January 18, 2007

**To:**         Meg Smith                          **Fax #:**       202-7610-5096

**Company:**    US Army Corps of Engineers         **Telephone:**

**From:**       STEVE URGO, ESQUIRE                **Telephone:**    215-665-3122

**Re:**         JD Determination – Tracking No. 20036062

**Pages:**      pages including cover

**Client No:**  70477-0001

☐ Urgent          ☐ Privileged and Confidential          ☐ Please Reply

☐ Original WILL be sent by Mail          ☐ Original WILL NOT be sent by Mail

**NOTES:** _____

_____

_____

_____

_____

_____

_____

*IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE.*

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMES R. SHORT, | ) | |
| | ) | **Case No. 1-07-cv-02260** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES | ) | |
| ARMY CORPS OF ENGINEERS, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

This is a FOIA suit brought by James Short against the United States Army Corps of

Engineers (the "Corps").  Mr. Short owns a parcel of real estate in a residential subdivision

in Worcester County, Maryland.  See Plaintiff's Counterstatement of Material Facts And

Response To Defendant's Statement of Material Facts Not In Dispute ("Counterstatement")

at ¶ 1.

On January 16, 2007, Mr. Short filed a Freedom of Information Act request with the

Corps seeking "all records" relating to his parcel "including wetlands delineations,

conservation easements, correspondence generated by the Corps in response to the

Jurisdictional Determination Applications [filed by Mr. Short], and any internal

memorandum or other documents generated by the Corps in connection with the JD

application."  See Counterstatement at ¶ 11.  Mr. Short filed the request in an attempt to

learn what action the Corps had taken on his application for a Jurisdictional Determination

that certain features on his property were not wetlands. See Counterstatement at ¶¶ 2-7.

The application had been filed in 2002 and had languished, neither approved nor

disapproved, despite efforts by Mr. Short's consultants and attorneys to obtain definitive

action, for nearly five years. See Counterstatement at ¶¶ 8-10.

Mr. Short's unhappy experience with the Corps regarding his JD Application pales

in comparison to the manner in which his FOIA request was handled. Nearly one full year

after his request was served on the Corps, no documents had been produced and none of the

excuses the Corps had offered constituted legally cognizable reasons for failing to timely

produce the requested documents. See Counterstatement at ¶¶ 13-19.

Accordingly, Mr. Short's options were to give up -- on his JD Application and his

FOIA request -- or to file suit to compel the Corps to comply with FOIA. Mr. Short filed

this suit on December 17, 2007.

The Corps first learned of the suit on December 31, 2007 -- the effective date of the

OPEN Government Act of 2007.[1]  Counterstatement at ¶ 20-21. Four days later the Corps

produced 438 pages of documents and 19 drawings in response to Mr. Short's FOIA

request. The documents and drawings were received by Mr. Short on January 7, 2008.

Three days later, Jeff Lorenz, a lawyer for the Corps called counsel for Mr. Short and

requested that he dismiss the suit as moot. See Exhibit 13 to Counterstatement. Mr. Lorenz

was advised that counsel needed to review the materials that had been produced to

determine whether any documents were missing. Id.

On January 18, 2008 the Corps was advised in writing that six categories of

documents were missing from the Corps' production. Counterstatement at ¶ 41. On the

---

[1] Public Law No. 104-231, 110 Stat. 3048 (December 31, 2007).

same day Mr. Lorenz responded that "most of the six items you inquired about do not exist in our records." Counterstatement at ¶ 42.

On January 24, 2008, counsel for Mr. Short wrote again to Mr. Lorenz and gave illustrative examples of why the six categories of documents were most likely in the hands of the Corps -- and since Mr. Lorenz had speculated that some documents within the six categories had been destroyed -- he requested the Corps' Document Retention and Destruction Policy. Counterstatement at ¶ 43. Instead of producing documents, the Corps' response was to file the instant dispositive motion.

The documentation offered to support the Corps' Motion to Dismiss Or, In The Alternative, For Summary Judgment (the "Corps' Motion"), confirmed what Mr. Short has long suspected, namely that the six categories of missing documents, and likely many more documents, were not produced because the so-called "search" undertaken by the Corps was woefully inadequate. The particulars of the shortcomings of the search became apparent upon examination of two Declarations submitted in support of the Corps' Motion. See Exhibits 10 and 12 of the Counterstatement.

Margaret Smith, a management-level Corps employee presently working in the Baltimore Branch was search "coordinator" commencing on December 31, 2007, the day the Corps learned of the suit. Earlier, in January and February, 2007 she was employed at the Corps' Headquarters in Washington, D.C. and was involved in issues being considered by the Corps in connection with Mr. Short's Application for a Jurisdictional Determination. In fact, in that role, she was the recipient of correspondence that should have been, but was not, produced when she coordinated the search for documents responsive to Mr. Short's FOIA request one year later.

4299091

3

Ms. Smith's Declaration is offered to show that: 1) "a thorough search of Corps' headquarters" was made; 2) "the Baltimore District's Regulatory Branch was the only location where responsive records existed," and 3) the Corps performed "a reasonable and adequate search for responsive records by employing a method reasonably expected to produce [the records sought by Mr. Short's FOIA request]." See Defendant's Statement of Material Facts Not In Dispute at p.2, ¶3; Defendant's Memorandum In Support of Motion to Dismiss Or, In the Alternative, For Summary Judgment at p. 13.

In fact, Ms. Smith's Declaration is cast entirely in conclusory terms. It does not show that it was made on personal knowledge; it does not set out facts that would be admissible in evidence, and it does not show that Ms. Smith is competent to testify on the matters stated, all as required by Fed.R.Civ.P. 56(e)(1). For detailed particulars of the inadequacies of Ms. Smith's Declaration, in the context of this case, please see Counterstatement at ¶¶ 24-32.

The Corps has also tendered the Declaration of Michael Fraer in support of its Motion. Mr. Fraer's Declaration is intended to show: 1) the adequacy and reasonableness of the search; 2) that Headquarters was thoroughly searched; and 3) that the Branch is the only location where responsive records exist. It fails on all points. It fails because it does not meet the requirements of personal knowledge, admissibility and competency required by Rule 56. For a detailed discussion of the inadequacies of Mr. Fraer's Declaration, please see paragraphs 36-39.

4

## II.    SUMMARY OF ARGUMENT

The Corps proceeds on the legal theory that Short's action is moot because, it says, it produced all responsive documents and there is nothing left for this Court to decide. Alternatively, the Corps claims that it is entitled to summary judgment because, it says, its search was reasonable and all responsive documents were produced.

Mr. Short's claim is not moot because there are several categories of documents that Mr. Short requested but which have not been produced, the Corps has failed to demonstrate that its search for records was reasonable or adequate in the circumstances of this case and Mr. Short's claim for fees and costs remains outstanding.

Mr. Short cross-moves for summary judgment.  The competent evidence before this Court shows that the Corps has failed to sustain its burden to establish that its search was reasonable or adequate.  The Corps' own evidence shows that at least one other location (Headquarters) should have been thoroughly searched, but was not.

The Declarations of Smith and Fraer do not disclose the scope of the search that was performed, the time frame of the search (back to 1993), the search terms used, the nature of the Corps' filing system and how it was searched, what was done to determine if responsive documents were archived off-site or digitally on-site, who performed the search, who supervised the searchers, whose e-mail accounts were reviewed and whose e-mail accounts were not reviewed and on what basis that decision was made.  In other words, there is no evidence that the search was reasonably calculated to locate responsive documents.

On this record, Mr. Short is entitled to a summary judgment, declaring that the Corps has violated FOIA by failing to conduct a timely, adequate and reasonable search and

by failing to produce all requested documents. In addition, Mr. Short respectfully requests an order permitting discovery (depositions) to determine all locations where the requested records may be located and the scope of the search that will be required to find those records. Finally, Mr. Short asks that this Court order the Corps to produce, from the aforementioned six categories of documents, those which the Corps has found, but not produced, and the Corps' Document Retention and Destruction Policy. Plaintiff intends to move for its reasonable fees and costs at the appropriate time.

## III.    ARGUMENT

### A.    Mr. Short's Claim Is Not Moot

Federal Rule of Civil Procedure 12(b)(1) requires that a plaintiff demonstrate that the court has jurisdiction. In the context of this case, the basic question is whether there is a live controversy between the parties before the court. To make that determination, the court may consider material extrinsic to the pleadings, but must accept as true the factual allegations of the complaint. *Judicial Watch, Inc. v. U.S. Food and Drug Admin.*, 514 F.Supp.2d 84, 86 (D.D.C. 2007). [citations omitted].

A FOIA case can become moot "once *all* documents are released to the requester." *Judicial Watch*, 514 F.Supp.2d at 88. (citing *Crooker v. U.S. State Dept.*, 628 F.2d 9, 10 (D.C.Cir. 1980). (emphasis supplied). A FOIA case is not moot if the plaintiff has a cognizable interest in having a court determine whether the agency's FOIA search satisfies the criteria under FOIA and relevant case law. *Id*. (citing *Looney v. Walters-Tucker*, 98 F.Supp.2d 1, 2 (D.C.C. 2000)).

**Mr. Short Has a Valid Claim That the Corps Has Failed to Produce
All Responsive Documents; This Court Has Jurisdiction to
Determine That Issue.**

Mr. Short's claim is not moot; far from it. Review of the Corps' partial production

of January 4, 2008, disclosed six categories of missing documents as follows:

1. Permit application for Permit No. CENAB-OP-RS (SECTION 15B) 94-
   6727-1;

2. Permit application for Permit No. CENAB-OR-RS(OCEAN PINES L.L.C. –
   BALFOUR HOLDINGS INC.) 94-65634-1;

3. All easements and/or covenants concerning tidal and/or non-tidal wetlands
   that were accepted by the Corps on October 12, 1995 – as identified at
   paragraph 13 of permit no. CENAB-OP-RS(SECTION 15B)94-67271-1 –
   covering wetland encroachment of Section 15B;

4. All exhibits designated as Exhibit "H" of the November 2, 1995 Declaration
   and Agreement of Easement between Ocean Pines, L.L.C. and Ocean Pines
   Association (the "Easement");

5. State of Maryland Nontidal Wetlands and Waterways Permit No. 199465634
   identified at paragraph 3 of the Easement;

6. All wetland delineation reports, including but not limited to all figures, aerial
   photographs, maps, soil and plant surveys and field notes used in preparation
   of Exhibit G – Section 15B Boundary Survey and Wetlands Location dated
   October 1993 and prepared by Atlantic Consulting.

On January 18, 2008 Mr. Short requested the Corps to produce the foregoing

documents. See Exhibit 13 to Counterstatement. In a letter, the Corps responded that most

of these documents are no longer in the Corps' files. See Exhibit 14 to Counterstatement.

The Corps has now shifted and takes the position that none of the above requested

documents exist in its files. *See Def. Memo of Law in Support of its Motion at* p. 11. The

Corps, however, has not provided an affidavit to support that conclusion. Thus, the Corps

has failed to establish that responsive documents are no longer in its files.

7

Its failure to do so is not surprising. Despite the claim in its papers that it thoroughly searched Corps' Headquarters, the declarations it has tendered wholly fail to support that conclusion. Other than placing a call to Headquarters, the "search coordinator," Ms. Smith gives no information about her efforts to determine whether responsive documents exist in Headquarters' files. See Exhibit 10 to Counterstatement. Nor is the Declaration of Michael Fraer, the Corps' "FOIA Officer," enlightening. The word "Headquarters" does not even appear in his Declaration.

Moreover, the Corps has offered no evidence that appropriate inquiries were made to determine whether the records in question, dating back 15 years, were archived; stored off-site; or removed from the files, reduced to microfiche or digital format and placed in storage elsewhere.

Thus, the conclusion the Corps ask this Court to make – that the six categories of documents that were not produced do not exist in its files – is unsupported. In addition, the competent evidence that the Corps has adduced, being the Declarations of Smith and Fraer, do not establish facts that would be necessary to infer that the missing documents are not in Corps' files. Thus, on the record before it, the Court should deny the Corps' request for dismissal on grounds of mootness and instead Order the Corps to produce the six categories of missing records or explain why it cannot do so.

**B.    Mr. Short Is Entitled To Summary Judgment**

Summary judgment will be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Moreover, "In determining a motion for summary judgment, the court may assume

8

4299091

that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Bonaparte v. United States Dept. of Justice*, 531 F.Supp.2d 118, 121 (D.D.C. 2008) (citing LCvR 7(h)). Facts are material if they may affect the outcome of a suit under governing law. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A genuine issue of material fact exists where the evidence – viewed in a light most favorable to the non-moving party – could result in a reasonable jury returning a favorable verdict for the non-moving party. *Judicial Watch, Inc. v. U.S. Food and Drug Admin.*, 514 F.Supp.2d 84, 87 (D.D.C. 2007) [citation omitted].

In order for a FOIA defendant to prevail on a summary judgment motion as to the adequacy of its search, the defendant "must demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Nat'l Magazine v. U.S.C.A.D.C.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (citing *Weisberg v. United States Dep't of Justice*, 705 f.2d 1344, 1351 (D.C. Cir. 1983)). The central issue on summary judgment is "not whether there might exist any other documents responsive to the request, but rather, whether the *search* for the documents was *adequate*." *Steinberg v. U.S Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). (emphasis original).

Short filed a proper request under FOIA to obtain all documents responsive to his request. The Corps raised no statutory exemptions to Short's request – nor could it. The Corps produced some responsive documents. It has, however, failed to meet its burden to demonstrate that it conducted a reasonable good-faith search in response to the request. Based upon Short's Counterstatement, it is undisputed that the Corps failed to meet or even approach the standard for reasonableness regarding its search.

Now – with nothing more than baseless-conclusory affidavits the Corps baldly asserts that its years worth of bungling in responding the Short's FIOA request amounts to a reasonable search.  In fact, the Corps' affidavits fail to provide any evidentiary basis that its search was reasonable.  To the contrary, the affidavits are exemplary of the Corps' unreasonableness of its search and are at best caricatures of what the law requires to demonstrate a reasonable search under FOIA.

Despite the efforts of Margaret Gafney-Smith – the supervisor of the search – she was unable to locate a 20 page letter sent to her by Short's counsel in January 2007.  *Counterstatement at* ¶24.  Here search for this letter consisted of nothing more than a phone call to her former office in the Corps D.C. Headquarters.  *Id.*  Just whom she spoke with and what she asked for in connection with this letter remains a mystery.  Although the Baltimore Branch did produced a subsequent letter dated February 14, 2007 – on which Ms. Smith was copied – her "search" also failed to locate this letter.

Ms. Smith goes onto explain that it was determined that the Baltimore branch did contain responsive documents.  She does not explain, however, how that determination was made, who made it, and how she ruled out that other Corps' historic document repositories would not contain responsive documents.  *Counterstatement at* ¶26.  Her explanation of the whereabouts or lack thereof of the letter confirming her January 18, 2007 conversation with Short's counsel is likewise unenlightening.  *Id.* at ¶¶27-28.

Assuming that the Corps – like every other federal agency – stores and transmits information electronically – Ms. Smith's complete lack of reference to or production of any emails or documents stored via other types of electronic media is astonishing to say the least.  Yet the Corps submits that Ms. Smith's one and only phone call to Headquarters and

her resultant failure to find letters sent to her less than a year prior to Short's FOIA request constitutes a "thorough" search of the Corps' D.C. Headquarters office. In support of this conclusion, the Corps provides none of the terms it used to find the documents produced. It does not describe who conducted the search; what timer period the search covered; whose files it searched and how it determined which files to review.

Moreover, Short asked for internal memorandum discussing the processing of his application and why it was never acted upon. No such internal memorandum were produced. It is difficult to fathom that in a bureaucratic organization such as the Corps there is not one memo that at least acknowledges that the Application was received and describing what steps were undertaken to evaluate it. There are no memorandum to or from Mr. Woody Francis – the Corps biologist who was apparently calling the shots on the JD Application. Unless the Corps Baltimore District has delegated the Branch Engineer's authority to issue JDs to Francis – one would expect a reasonable search to have uncovered evidence of communications between Francis and his superiors. Yet none were produced.

To find that such a search was "reasonable" under FOIA would utterly eviscerate FOIA and would directly contradict the Corps own regulations that allege that the government's avowed policy under FOIA is one of openness – not secrecy [Cite]. Under a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, dismissal is warranted if the plaintiff does not plead sufficient facts "to state a claim for relief that is plausible on its face." *Judicial Watch*, 514 F.Supp.2d at 86 (citing *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In performing this determination, the court must construe allegations and facts in the compliant in a light most favorable to plaintiff, and must grant plaintiff the benefit of all inferences flowing from the

alleged facts. To the extent that the Corps contends that Short has not set forth a claim entitling him to attorneys' fees under FOIA, this too must fail. As explained in detail in his motion for fees, Short has satisfied all conditions precedent necessary to warrant an award of fees under FOIA, i.e., that the Corps' voluntary search for and production of documents – albeit inadequate – demonstrates that Short is a prevailing party and therefore entitled to fees as a matter of law.

Accordingly, Short seeks an order from this Court directing the Corps to produce the outstanding but un-produced documents.

### Short is Entitled to Summary Judgment on The Issue That the Corps Violated FOIA by Failing to Undertake a Reasonable Search for Responsive Records.

In producing some responsive documents, and by not providing supporting affidavits stating that certain responsive documents that were requested are no longer in its files, the Corps has not met its burden to demonstrate that its search was "reasonable". Under this Circuit's articulated standard of reasonableness, the Corps – as the record holder – must demonstrate that its search was in good faith and used methods that can reasonably be expected to produce the requested records. *Bonaparte v. United States Department of Justice*, 531 F.Supp.2d 118, 122 (D.D.C. 2008). While an agency may use affidavits to demonstrate that its search was reasonable, those affidavits must be reasonably detailed and non-conclusory. As discussed below, the Corps' affidavits miss both marks.

The opinions cited by the Corps describe this standard in detail. Apparently, however, the Corps is not obliged to follow this standard[2]. *See e.g. Nat'l Magazine v.*

---

[2] The Corps also cites several cases for the position that its affidavits enjoy a presumption of good faith. *Chilingirian v. United States Attorney Executive Office*, 71 Fed. Appx. 571, 572 (6th Cir. 2003); *Ground Saucer Watch Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1982); *Chamberlain v. United States Dep't of Justice*, 957 F.Supp. 292, 294 (D.D.C. 1997); *Albuquerque Publ'g Co., v. United States Dep't of Justice*, 726 F. Supp.

*U.S.C.A.D.C.,* 71 F.3d 885, 890 (D.C. Cir. 1995) (denying agency summary judgment on reasonableness of search: agency must make good faith effort to search for requested documents; cannot limit search to only one system if others likely to contain responsive documents; affidavits must identify search terms, type of search and aver all files likely to contain files were searched; conclusory affidavits that agency reviewed relevant files insufficient to warrant summary judgment).

Likewise, in *Oglesby v. U.S. Dept of Army*, 920 F.2d 57 (D.C. Cir. 1990) the court denied summary judgment to Department of State as to the reasonableness of its FOIA search. The court found that an affidavit that did not describe with reasonable detail that search method used was reasonably calculated to find all relevant documents. It also did not identify search terms or describe how the search was conducted. Id. at 68. *See also Steinberg v. U.S Dept. of Justice*, 23 F.3d 548, 551-52 (D.C. Cir. 1994) (denying summary judgment to U.S. Attorney Office where search did not describe in detail which records were searched, by whom and how the search was conduced.

The reason that the affidavits must be reasonably detailed is so that the requester and the court can have some degree in confidence that all documents have been produced. *Founding Church of Scientology of Washington, D.C. v. Nat'l Sec. Agency,* 610 F.2d 824, 836 (D.C. Cir. 1979). In *Scientology*, the court found that the NSA was not entitled to

---

851, 860 (D.D.C. 1989). All of these cases however, rely upon *Goland v. CIA* 607 F.2d 339, 355 (D.C. Cir. 1978) for this assertion. Essentially all of the discussion of good faith in *Goland* has to do with the manner in which documents were produced – not what was stated in affidavits. *See Id.* at 355. The only statement regarding good faith in relation to affidavits was in reference to transcripts of Congressional hearings. The CIA affidavit stated that the documents – if they exist – were not in possession of the CIA and since the transcripts were Congressional materials and there was no indication that a Congressional committee had received or returned the documents to the CIA, there was no reason to question the good faith of the CIA affidavit. *But See Miller v. U.S. Dept. of State,* 779 F.2d 1378 (8th Cir. 1986) ("An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith.") (citing *Goland v. CIA*, 607 F.2d 339, 352, *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).

4299091

summary judgment on the issue of the reasonableness of its search because the supporting affidavits were based on conclusory statements to the effect that searches of files that may reasonably have contained responsive documents were searched but no responsive documents were found. *Id.* at 834. NSA also averred that it had no central file index and that some files were in alphabetical order, while others were chronologically ordered. The court viewed with suspicion NSA's characterization of its search as "thorough" despite a system that would appear to doom any search for responsive documents. *Id.* at 835. Additionally, NSD did not aver that its search method used was the only feasible method of searching. This, coupled with the fact that documents that another government agency subsequently produced showing that the NSA had responsive documents that resulted in the NSA finding these same documents in a later search convinced the court that the NSA's search was unreasonable.

Here, just as in *Oglesby ,Steinberg* and *Bonaparte*, the Corps' affidavits do not provide the requisite detail to offer even a glimmer of hope of meeting any articulated standard of reasonableness. The Corps fails to state who conducted its search; what files it searched; who determined or how it determined which files to search. It does not identify search terms and it makes no supportable statement that there are no other files or records that exist that could contain responsive documents. Moreover, the Corps failed to undertake any search – reasonable or otherwise – demonstrating the whereabouts of the identified responsive but un-produced documents. It has proffered no evidence that these documents do not exist in its files. Similarly, it never responded to Short's request for its document retention and destruction policies.

Similarly, here just as in *Scientology*, Short has in his possession documents that the defendant agency should have – the letters sent to Ms. Smith. Just as in *Scientology* these documents should have but were not produced by the defendant agency. Also, the Corps seems to have taken a page straight from the NSA's play book by proffering the same types of self-serving conclusory statements in its affidavits that were rejected by the *Scientology* court.

As discussed in Short's Counterstatement, the Corps provided only conclusory statements that its search was reasonable. *See* Disputed Counterstatement at ¶¶25-33 and 36-39. In order for the Corps affidavits to be entitled to a presumption of good faith, those affidavits must be "adequate." *Chilingirian v. United States Attorney Executive Office*, 71 Fed. Appx. 571, 572 (6th Cri. 2003); *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1982). Here, the Corps affidavits are not entitled to any presumption of good faith – because they fail to disclosure or even suggest that the Corps made a reasonable search. *Judicial Watch*, 514 F.Supp.2d at 89 (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir. 1981)). Therefore Short is not required to demonstrate a lack of good faith in connection with the Corps' search in order to succeed on this Motion. *Maynard v. CIA,* 986 F.2d 547, 560 (1st Cir. 1993).

While an agency isn't required to search every conceivable file or system, it cannot limit its search to one system if there are others that would likely contain the requested information. A search is reasonable if it describes **in detail** the filing systems searched, the methods used to search for the records, and the search terms utilized. *Id.* Additionally, the agency must affirmatively state that it searched all files likely to contain responsive records.

*Id.* The Corps failed to undertake a reasonable search in response to Short's request because it is undisputed that:

- The Corps has not stated that all files likely to contain responsive records were searched. *See Counterstatement at* ¶¶ 29-33;

- The Corps did not describe which systems it searched for responsive records. *Id.*;

- The Corps did not describe the search terms it used to conduct its search. *Id.*;

- Other than baldly stating that the Baltimore Branch is the only location in which records would be located, it did not describe the search methods it used to find the records or how it ruled out the fact that no other system contained the responsive records; and

- The Corps did not provide any details whatsoever on what efforts it undertook, if any, to search for the six categories of documents that were requested but were not produced. *See Counterstatement at* ¶¶ 29-33

Finally, the Corps' self-servingly states that after a reasonable and diligent search of its' Headquarters for documents regarding a January 18, 2007 conversation with Short's counsel, it concluded that "no documents exist of that conversation." *See* Exhibit "B" – Gaffney-Smith Affidavit to Corps' motion. To the contrary, this document does in fact exist. *See* Exhibit "13." The Corps did not identify who it spoke to at Headquarters regarding this document; how it identified or searched for the document, or what other files may exist at Headquarters that are relevant to its search. How can Short – or any member of the public – be assured that the Corps' search for documents dating back to 1993 was "reasonable" when the Corps' "diligent" and "thorough" search could not even locate a document from 2007? For all these reasons, Short is entitled to summary judgment and an Order from this Court requiring the Corps to conduct a reasonable search for all responsive records, provide Short with any other responsive documents located as a result of this

16

search and permit Short to take discovery (depositions) to ascertain the facts necessary to ensure a proper search is coordinated.

## IV.    Conclusion.

For the foregoing reasons, Short respectfully requests that this Court issue an Order retaining jurisdiction over the adequacy of the Corps' records search and directing the Corps to conduct a reasonable search of its records within a date certain and provide Short with copies of those documents and permit discovery as necessary.

Respectfully submitted,

Dated: 7/28/08

Joseph J. McGovern, Esquire
(D.C. Bar No. 936609)
OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone: (215) 665-3000
Fax: (215) 665-3165
*Attorneys for James R. Short, Plaintiff*

4299091

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES R. SHORT,                )
                              )     **Case No. 1-07-cv-02260**
                Plaintiff,     )
                              )
        v.                     )
                              )
UNITED STATES                  )
ARMY CORPS OF ENGINEERS,       )
                              )
                Defendant.     )
_____)

**AFFIDAVIT OF STEVEN D. URGO, ESQUIRE IN SUPPORT OF PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT**

COMMONWEALTH OF PENNSYLVANIA    :
                                 :        SS
CITY OF PHILADELPHIA             :

I, Steven D. Urgo, Esquire hereby affirm that:

1.    I am senior associate attorney at Obermayer Rebmann Maxwell & Hippel

LLP at 1617 John F. Kennedy Boulevard, One Penn Center, Suite 1900, Philadelphia,

Pennsylvania.

2.    I submit this affidavit in support of plaintiff James R. Short's Cross-Motion

for Summary Judgment.

3.    The information provided in the Counterstatement of Material Facts And

Response To Defendant's Statement of Material Facts Not In Dispute

("Counterstatement") is true and correct to the best of my knowledge, information and

belief.

4.    I have personal knowledge of the matters set forth herein, except as otherwise

indicated, and if called as a witness, would testify competently thereto.

4298964

5.    Exhibits "2", "3", "4", "5" and "7" to the Counterstatement are true and correct copies of documents that were produced on January 4, 2008, by the Corps in response to Mr. Short's FOIA request.

6.    Exhibits "6" and "9" to the Counterstatement were not produced by the Corps in response to Mr. Short's FOIA Request.  Exhibit "6" is a true and correct copy of correspondence I prepared and sent via fax to Margaret Smith (a/k/a "Meg" Smith) along with 19 pages of materials that she had asked me to forward to her in connection with her involvement in processing Mr. Short's JD Application.  Exhibit "9" comprises true and correct copies of e-mails that I prepared and sent to Mr. Fraer.

7.    Exhibit "8" is a true and correct copy of correspondence I prepared and mailed to Jeff Lorenz, Esq., a lawyer for the Corps.  I sent Margaret Smith a copy of that correspondence.  In response to Mr. Short's FOIA request, the Corps produced only one copy of that correspondence; the copy that I sent to Mr. Lorenz.  The Corps did not produce the copy of the correspondence that I sent to Ms. Smith.

8.    Exhibit "13" to the Counterstatement is a true and correct copy of a January 15, 2008, letter that I prepared and faxed to Jeff Lorenz, Esq.

9.    Exhibit "15" to the Counterstatement is a true and correct copy of January 24, 2008, letter that prepared and e-mailed to Brian Baldrate, Esq. and Jeff Lorenz, Esq.

10.    Exhibit "16" to the Counterstatement is a true and correct copy of an April 27, 2004, e-mail that the Corps produced on January 4, 2008, in response to Mr. Short's FOIA request.  The Corps produced Mr. Francis' copy of the e-mail, but it did not produce Ms. Quinn's copy of the e-mail.

_____
Steven D. Urgo

SWORN TO AND SUBSCRIBED

THIS 28 DAY OF JULY 2008.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
RACHELLE M. KERRIGAN, Notary Public
City of Philadelphia, Phila. County
My Commission Expires October 17, 2008

4298964

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES R. SHORT,                          )
                                         )    **Case No. 1-07-cv-02260**
          Plaintiff,                     )
                                         )
     v.                                  )
                                         )
UNITED STATES                            )
ARMY CORPS OF ENGINEERS,                 )
                                         )
          Defendant.                     )
_____  )

## ORDER

Upon consideration of Plaintiff's Cross-Motion for Summary Judgment, it is

hereby **ORDERED** s follows:

1.   Defendant's Motion to Dismiss Or, In The Alternative, for Summary

     Judgment is **DENIED.**

2.   Plaintiff's Cross-Motion For Summary Judgment is **GRANTED.**

3.   Defendant shall produce all documents identified in Plaintiff's Exhibit

     "13" by _____, 2008.

4.   Defendant shall submit to properly noticed depositions regarding where

     the requested records may be located and the scope of the search that will

     be required to find those records on or before _____, 2008.


                              _____
                              ROSEMARY M. COLLYER
                              United States District Judge

# EXHIBIT 7



**DEPARTMENT OF THE ARMY**
BALTIMORE DISTRICT, CORPS OF ENGINEERS
P.O. BOX 1715
BALTIMORE, MARYLAND 21203-1715

February 1, 2007

Office of Counsel

SUBJECT:  Freedom of Information Act (FOIA) Request from Steven D. Urgo, Esquire
(FOIA 07-021)

Steven D. Urgo, Esquire
Obermayer, Rebmann, Maxwell & Hippel, LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1895

Dear Mr. Urgo:

    Reference your recent FOIA request letter in which you requested record(s) pertaining to
a JD application for a parcel of property located in Ocean Pines Section 15B, Lot 64, Tax Map
21, Parcel 68, Worcester County, Maryland.

    A preliminary determination has been made to grant your request.  Once the responsive
records have been received and reviewed by this office, all releasable documents will be sent to
you.

    If you have any questions relating to this matter, kindly call me at (410) 962-2448.

                                        Sincerely,

                                        Michael S. Fraer
                                        Legal Assistant

RECEIVED

FEB 7  2007

Steven D. Urgo. Esq.

# EXHIBIT 8

# OBERMAYER

## REBMANN MAXWELL & HIPPEL LLP

*Attorneys At Law*

**Steven D. Urgo**
215-665-3122
steven.urgo@obermayer.com
Member NY, NJ & PA Bars

One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
215-665-3000
Fax 215-665-3165
www.obermayer.com

<u>**VIA FIRST CLASS MAIL**</u>

February 14, 2007

US Army Engineer District, Baltimore
Office of Counsel
P.O. Box 1715
Baltimore, MD 21203-1715

<u>Attention</u>:    Jeff Lorenz, Esquire

      **Re:    JD Determination – Tracking No. 20036062**

Dear Mr. Lorenz:

     As you know, this firm represents James R. Short with respect to the above-identified JD Tracking No. Please allow this to acknowledge our January 23, 2006 telephone conversation regarding Mr. Short's joint application for a Jurisdictional Determination. Mr. Short submitted his application to the Maryland Department of Environment ("DOE") on October 8, 2002, and the DOE forwarded it onto the Baltimore District on or about October 11, 2002.

     As I understand it, the Corps has not moved forward with the JD application in the four years since its submission on the basis that it has not received a "meets and bounds" description of a conservation easement that was established some time ago with respect to the Ocean Pines development, and specifically with respect to the subdivision that Mr. Short purchased from Balfour Holdings, Inc and subsequently developed. According to a prior conversation with Woody Francis of the District, any JD would be "moot" because most if not all of any "wetlands" on the subject parcel - identified as lot no. 64 in the Ocean Pines Section 15B – are within a conservation easement. According to our conversation, the Ocean Pines Association is the holder of this easement, but any attempt to modify the easement requires approval of the Corps and DOE. While this easement was based in part on a prior wetlands delineation, the area of the easement includes areas that are not wetlands, i.e., forested upland areas or "greenways". Moreover, the Corps contends that upon transfer of the subdivision from Balfour to Mr. Short, the Corps' permit no. 94-67271-1 was assigned by Balfour to Mr. Short, and that this permit obligated Mr. Short to undertake a survey depicting the meets and bounds of the conservation easement on every parcel within the subdivision. Thus, if I have it correct, the Corps is requiring evidence from Mr. Short that he is in compliance with permit no. 94-67271-1 as a prerequisite for moving forward with his JD application. If the foregoing is incorrect, please let me know.

## Over a Century of Solutions

Jeff Lorenz, Esquire
2/14/2007
Page 2

I understand that Mr. Francis will be sending me a copy of the conservation easement, an assignment of the Corps' permit that was executed by Mr. Short, along with a copy of the Corps' permit.

While I appreciate the Corps' assistance in providing this information, I am deeply troubled by the lack of any written history on the Corp's prior conversations with Mr. Short. Per my prior conversation with Mr. Francis, it appears that the development of Ocean Pines has a long history dating back to the 1960's. There were several subdivisions of the initial 600-acre tract and various transfers of the subdivisions amongst several parties. There also appear to be a long history involving creation of the conservation easement and issuance of the Corps' permit. None of this, however, was ever set forth in writing to Mr. Short. As I further understand it, the Corps has never issued a written response to Mr. Short's JD application wherein the Corps requested any additional information to proceed with the JD. Similarly, the Corps issued no written response to Mr. Short's prior counsel's request for a status of the JD as set forth in his letter of February 10, 2004 to Mr. Francis. When I specifically asked why the Corps has not provided Mr. Short with any written acknowledgment of his application or any deficiencies therein, the Corp's answer was that it would be too difficult to put something together that a layperson could understand and that the Corps generally doesn't have time to respond in writing to JD applications such as Mr. Short's. The Corps' also insisted that it had verbally advised Mr. Short of many of the issues discussed above. This is completely unacceptable.

The Corps, like any administrative agency, has procedures for responding to inquires from the regulated community, such as JD applicants. 33 CFR 320.1 (a)(6) regulates the issuance of JDs and specifically authorizes the Corps to issue "formal determinations concerning the applicability of the Clean Water Act...." Further, the District's own procedures for evaluating JDs state that upon receipt of a JD application, the Corps will conduct "A review to determine if the request has sufficient information to perform a jurisdiction determination. If not, a letter requesting additional information will be sent." Why then has the Corps never issued a letter to Mr. Short to explain the impact of the Ocean Pines historical development on his application, or to ask him for information concerning the impact of the easement on parcel 64?

Further, while I understand that Corps' position that the easement could impact that buildable footprint of the parcel, I do not see anything in the District's JD checklist that references any type of easement as one of the factors the Corps considers in a JD application. The JD form (revised 8/13/04) also is devoid of any reference to a conservation easement as a factor that would impact a JD. Additionally, I could not locate any reference to conservation easements as one of the parameters established by the Corps for determining wetlands as set forth in the Corps' 1987 Wetlands Delineation Manual. If there is some regulatory support for the Corps' position that the presence of a conservation easement negates the need for a JD, please provide me with a cite to that support. If no such authority exists, it is our position that the JD stands on its own and should proceed regardless of the impact of any conservation easement. The impact of the conservation easement, if any, on the lot is an issue between the title owner and the easement holder.

4123647

Jeff Lorenz, Esquire
2/14/2007
Page 3

To the extent that the Corps' permit for section B 15 has somehow incorporated the obligation to prepare a survey of and to record the conservation easement, and to the extent the permit was based upon a prior wetlands delineation, please provide me with documentation that supports that delineation with respect to lot 64. It is our intent to work with the Corps to resolve the wetland issue involving lot 64. To the extent that the conservation easement impacts the parcel, we also will work with the easement-holder to determine what obligations, if any, Mr. Short may have.

I look forward to receiving the above-requested information. In the interim, if you have any comments or questions, please feel free to contact me.

Very truly yours,

Steven D. Urgo

SDU/dct

cc:     Meg Smith

4123647



**OBERMAYER**
REBMANN MAXWELL & HIPPEL LLP
*Attorneys At Law*
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia
Pennsylvania 19103-1895

504

US Army Engineer District, Baltimore
Office of Counsel
P.O. Box 1715
Baltimore, MD 21203-1715
<u>Attention:</u>    Jeff Lorenz, Esquire

RECEIVED
2007 FEB 21  AM 10:34
BALTIMORE DISTRICT
OFFICE OF COUNSEL

# EXHIBIT 9

| | |
|---|---|
| **From:** | Fraer, Michael S NAB02 [Michael.S.Fraer@nab02.usace.army.mil] |
| **Sent:** | Wednesday, April 04, 2007 10:36 AM |
| **To:** | Urgo, Steven |
| **Subject:** | RE: FOIA 07-021 |

That's hard to say.  It depends on the volume of records we're talking about, the workload of the office where the records are located, the workload of the attorney assigned to review the records, etc., but I would hope for no more than maybe a month to a month and a half.

-----Original Message-----
From: Urgo, Steven [mailto:Steven.urgo@obermayer.com]
Sent: Wednesday, April 04, 2007 10:28 AM
To: Fraer, Michael S NAB02
Subject: RE: FOIA 07-021

Michael - thank you very much for getting back to me.  Do you have any timeframe for when you will receive the requested records for your
review?

-----Original Message-----
From: Fraer, Michael S NAB02
[mailto:Michael.S.Fraer@nab02.usace.army.mil]
Sent: Wednesday, April 04, 2007 10:25 AM
To: Urgo, Steven
Subject: RE: FOIA 07-021

Dear Mr. Urgo,

First, let me apologize for not responding to your emails sooner.  I was out of the office at a training conference from March 3-9.  When I got back in to the office next week, I had close to 100 emails waiting for me, and I inadvertently deleted yours.

When I receive a FOIA request, I send a memo to the records holder, along with a copy of the request, directing them to provide me two copies of the requested records.  It appears that the records holder never received my memo.  I have resubmitted the memo, and as soon as I receive the records and review them, any releasable records will be forwarded to you.

Michael S. Fraer
Office of Counsel
US Army Corps of Engineers, Baltimore District
(410) 962-2448


-----Original Message-----
From: Urgo, Steven [mailto:Steven.urgo@obermayer.com]
Sent: Tuesday, March 27, 2007 3:24 PM
To: Fraer, Michael S NAB02
Cc: McGovern, Joseph; Nick De Gennaro
Subject: FW: FOIA 07-021

Dear Mr. Fraer - please afford me the courtesy of a response to my email of March 8th.
Thanks.


From: Urgo, Steven
Sent: Thursday, March 08, 2007 10:03 AM
To: 'Michael.s.fraer@nab02.usace.army.mil'
Subject: FOIA 07-021

1

Dear Mr. Fraer:  Please allow this to acknowledge receipt of your February 1,
2007 letter regarding the above FOIA request.  Since the 20-day statutory response time
has expired, kindly advise me as to when I can expect to receive the requested documents.
Thank you for your assistance.

Regards,

Steven D. Urgo


The information in this email is confidential and may be legally privileged.
It is intended solely for the addressee.  Access to this email by anyone else is
unauthorized.  If you are not the intended recipient, any disclosure, copying,
distribution or any action or inaction taken in reliance upon it is prohibited and may be
unlawful.  If you believe that you have received this email in error, please contact the
sender.


Steven D. Urgo, Esquire

Member NY, NJ & PA Bars

Obermayer Rebmann Maxwell & Hippel, LLP One Penn Center
1617 JFK Boulevard, 19th Floor
Philadelphia, PA 19103-1895
phone: 215-665-3122
fax: 215-665-3165

http://www.obermayer.com <http://www.obermayer.com/>

http://www.obermayer.com/AttorneyDetails.php?action=view&id=87
<http://www.obermayer.com/AttorneyDetails.php?action=view&id=87>

**EXHIBIT 10**



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES R. SHORT,                          )
                                         )
              Plaintiff,                 )
                                         )
         v.                              )Civil Action No. 1:07 CV 02260 (RMC)
                                         )
UNITED STATES ARMY                       )
CORPS OF ENGINEERS                       )
                                         )
              Defendant.                 )
                                         )

DECLARATION OF MARGARET GAFFNEY-SMITH

Declaration: Discovery Search By Active Agency Component

DECLARTION OF AGENCY OFFICIAL RESPONSIBLE FOR RECORDS SEARCH

I, MARGARET GAFFNEY SMITH, do hereby declare:

1. I am the Chief of the Regulatory Branch (Branch) for the U.S. Army Corps of
Engineers Baltimore District.

2. On behalf of the Department of the Army, I was responsible for coordinating the
search for documents responsive to the Freedom of Information Act (FOIA) request made
by counsel for Mr. James Short on January 16, 2007.

3. On December 31, 2007 I learned that Mr. Short had an outstanding FOIA request with
the Baltimore District when I was made aware that counsel for Mr. Short had filed the
subject lawsuit in the U.S. District Court for the District of Columbia.

4. I have reviewed the FOIA request, which sought records with respect to Lot 64, a
parcel owned by his client, Mr. James R. Short, which Plaintiff described specifically as
located in Ocean Pines Section 15B, Lot 64, Tax Map 21, Parcel 68 (the "Parcel").

Plaintiff requested all documents including but not limited to those records generated by the Corps in response to or in connection with a Jurisdictional Determination ("JD") application for Lot 64 first filed October 11, 2002.

5.  After making inquiry of the Branch's administrative staff and the Section Chief for the county where the property in question is located regarding the status of the FOIA request, it was determined that responsive records did exist in the Branch Office.  I also called the U.S. Army Corps of Engineers Headquarters office, where I worked prior to becoming Branch chief in the Baltimore District, and though I had a telephone conversation with one of Mr. Short's attorneys regarding the lot, no documents exist of that conversation.

6. On January 3, and January 4, 2008, Mr. Woody Francis, a Branch employee with responsibilities that include permit evaluation, compliance, and enforcement in Worcester County, Maryland, performed a thorough search of files relating to lot 64 in section 15B of Ocean Pines.

7.  After exercising due diligence and engaging in a thorough and reasonable search of the records of the Baltimore District, Regulatory Branch on January 3 and 4, 2008, all records responsive to the FOIA request were located in the Baltimore District and reproduced for the requester.

8.  Documents responsive to the FOIA request consist of 438 pages of documents and 19 oversized drawings from project files. No documents were withheld for privilege or redacted.

9.  On January 4, 2008, the Baltimore District sent the requested records to the requestor via Federal Express for next business day delivery.  See Fraer Declaration Exhibit 7.

10.  The subject records were received at the law offices of Plaintiff's Counsel the morning of January 7, 2008.  See Fraer Declaration Exhibit 8.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   _31 March 2008_

_Margaret E. Gaffney-Smith_
Margaret Gaffney-Smith,
Chief, Regulatory Branch
U.S. Army Corps of Engineers,
Baltimore District

# EXHIBIT 11



# DEPARTMENT OF THE ARMY
BALTIMORE DISTRICT, CORPS OF ENGINEERS
P.O. BOX 1715
BALTIMORE, MARYLAND  21203-1715

January 4, 2008

Office of Counsel

SUBJECT:  Freedom of Information Act (FOIA) Request from Steven D. Urgo, Esquire
(FOIA Tracking Number 07-021)

Steven D. Urgo, Esquire
Obermayer, Rebmann, Maxwell & Hippel, LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103-1895

*RECEIVED*
*JAN 7  2008*
*Steven D. Urgo, Esq.*

Dear Mr. Urgo:

Reference your FOIA request letter in which you requested record(s) pertaining to a JD application for a parcel of property located in Ocean Pines Section 15B, Lot 64, Tax Map 21, Parcel 68, Worcester County, Maryland.

Enclosed please find your copy of the requested records.  We want to sincerely apologize for the delay in processing your request.  After an initial inquiry, we have determined that your request was likely lost due to a retirement in the division where the records are held.

In order to expedite your records to you, we are sending them via Federal Express. To avoid further delay, we will contact you next week once we have calculated the appropriate fees.

In the future should you have any concerns about a FOIA request with this District, please feel free to call me at (410) 962-3385.

Sincerely,

Patricia M. Ryan
Assistant District Counsel

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JAMES R. SHORT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:07 CV 02260 (RMC) |
| ) | |
| UNITED STATES ARMY ) | |
| CORPS OF ENGINEERS ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DECLARATION OF MICHAEL S. FRAER**

1. I, Michael S. Fraer, am the Freedom of Information Act ("FOIA") Coordinator, United States Army Corps of Engineers, Baltimore District ("USACE Baltimore"), Baltimore, Maryland.

2. Pursuant to my official duties in that position, I am familiar with the records and events described in this declaration.

3. The plaintiff in the above-captioned civil case, James R. Short, is a real estate developer in Worcester County, Maryland. Mr. Short is represented by Steven D. Urgo, Esquire, an attorney with the law firm of Obermayer, Rebmann, Maxwell & Hippell, LLC ("Obermayer"). The defendant is the USACE.

4. In this case, plaintiff is seeking the production of documents pursuant to the FOIA with respect to Lot 64, a parcel owned by his client, Mr. James R. Short, which Plaintiff described specifically as located in Ocean Pines Section 15B, Lot 64, Tax Map 21, Parcel 68 (the "Parcel"). Plaintiff requested all documents including but not limited to those records generated by the Corps in response to or in connection with a Jurisdictional Determination ("JD") application for Lot 64 first filed October 11, 2002. See Exhibit 1 (January 16, 2007, email) and Exhibit 2 (January 16, 2007, letter) attached hereto.

5. By letter dated February 1, 2007, this office made an initial reply to plaintiff's FOIA request. See Exhibit 3 (February 1, 2007, letter) attached hereto.

6. By memorandum dated February 6, 2007, this office forwarded the plaintiff's request to the Baltimore District Regulatory Branch. See Exhibit 4 (February 6, 2007, memorandum) attached hereto.

7. By email, plaintiff's counsel inquired, on March 8, 2007, as to the status of the FOIA request. In an April 4, 2007 email, declarant informed plaintiff's counsel that he was out of town at a training conference from March 3-9, 2007. When declarant returned, there were approximately 100 emails in his inbox, and the email from plaintiff's counsel was inadvertently deleted. See Exhibit 5 (March 8, 2007 – April 4, 2007 email string) attached hereto.

8. By memorandum dated April 4, 2007, this office forwarded a follow-up request to the Baltimore District Regulatory Branch. See Exhibit 6 (April 4, 2007 memorandum) attached hereto.

9. The records at issue were located in the Regulatory Branch, Operations Division, USACE Baltimore, 10 South Howard Street, Baltimore, Maryland 21201. This Branch has administrative custody and control over all regulatory permit matters within USACE Baltimore. As such, this is the only location in which the requested records might have been located. They

were located by a thorough search of the records in the Regulatory Branch.  The responsive records consisted of 438 pages of documents and 19 pages of oversized drawings.

10.  These records and drawings were reviewed for possible withholdings under the withholding exemptions of the FOIA.  No documents were withheld or redacted.

11.  On January 4, 2008, the 438 pages of documents and 19 pages of oversized drawings were sent by Federal Express to plaintiff's counsel.  This mailing of records to plaintiff's counsel was the full provision of all records provided that were responsive to plaintiff's FOIA request.  All of these records were provided without redaction of any kind.  In order to expedite the response, USACE Baltimore's letter accompanying the responsive records informed plaintiff that the fee calculation for this request would be forwarded the next week.  See Exhibit 7 (January 4, 2008, letter) attached hereto.  The responsive records were received by "E. Bowles" in plaintiff's counsel's Philadelphia office at 8:22 AM, January 7, 2008.  See Exhibit 8 (Track Shipments/FedEx Kinko's Orders Detailed Results) attached hereto.

12.  On January 10, 2008, a letter explaining the fee calculations for this request was forwarded to plaintiff's counsel.  See Exhibit 9 (January 10, 2008, letter) attached hereto.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 31, 2008.  Executed under 28 U.S.C. 1746.

Michael S. Fraer
FOIA Coordinator
US Army Corps of Engineers,
Baltimore District
10 South Howard Street
Baltimore, Maryland  21201

**EXHIBIT 13**



# OBERMAYER

REBMANN MAXWELL & HIPPEL LLP

*Attorneys At Law*

One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
P 215-665-3000
F 215-665-3165
www.obermayer.com

# Facsimile Transmittal

**Date:**      January 18, 2008

**To:**      JEFF LORENZ, ESQUIRE          **Fax #:**      410-962-0779

**Company:**  U.S. Armey Engineer District, Baltimore  **Telephone:**  410-962-3385

**From:**    STEVEN D. URGO, ESQUIRE        **Telephone:**  215-665-3122

**Re:**      Short v. U.S. Army Corps of Engineers U.S. D.Court, D.C. 1:07-CV-02260

**Pages:**    3 pages including cover

**Client No:**  70477-0001

☐ Urgent      ☐ Privileged and Confidential      ☐ Please Reply

☐ Original WILL be sent by Mail      ☐ Original WILL NOT be sent by Mail

NOTES: _____

_____

_____

_____

_____

_____

*IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE.*

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION OR DISTRIBUTION OF THIS COMMUNICATION TO OTHER THAN THE INTENDED RECIPIENT IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY. THANK YOU.

## Over a Century of Solutions®

| Philadelphia | Harrisburg | Pittsburgh | Altoona | Cherry Hill | Wilmington |
|---|---|---|---|---|---|
| Pennsylvania | Pennsylvania | Pennsylvania | Pennsylvania | New Jersey | Delaware |

4239514



**OBERMAYER**

REBMANN MAXWELL & HIPPEL LLP

*Attorneys At Law*

Steven D. Urgo
215-665-3122
steven.urgo@obermayer.com
Member NY, NJ & PA Bars

One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
215-665-3000
Fax 215-665-3165
www.obermayer.com

**VIA TELECOPY AND
FIRST CLASS MAIL**

January 18, 2008

US Army Engineer District, Baltimore
Office of Counsel
P.O. Box 1715
Baltimore, MD 21203-1715

<u>Attention</u>:   Jeff Lorenz, Esquire

**Re:**   ***Short v. U.S. Army Corps of Engineers*, U.S. Dist. Court, D. D.C.,
No. 1:07-CV-02260**

Dear Mr. Lorenz:

This acknowledges my conversation on January 10, 2008 with you and Patricia M. Ryan, Assistant District Counsel, regarding the above referenced litigation. As you know, Mr. Short initiated an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* to obtain documents pertaining to all wetlands delineations, conservation easements, correspondence and memorandum concerning his Berlin, Maryland property and his October 8, 2002 application for a Jurisdictional Determination for the property.

Per a January 4, 2008 letter, Ms. Ryan submitted to me certain documents – allegedly in response to my January 16, 2007 FOIA request. During our conversation, you asked if Mr. Short would consider his FOIA request moot in light of the Corps' production of documents. I advised you that before I could pass your proposal on to Mr. Short, I would need to review fully the Corps' production to determine if all responsive documents had been produced. My review indicates that the following documents were not part of the Corps' January 4th production:

1. Permit application for Permit No. CENAB-OP-RS(SECTION 15B)94-67271-1;

2. Permit application for Permit No. CENAB-OR-RS(OCEAN PINES L.L.C. – BALFOUR HOLDINGS INC.)94-65634-1;

3. All easements and/or covenants concerning tidal and/or non-tidal wetlands that were accepted by the Corps on October 12, 1995 – as identified at paragraph 13 of permit no. CENAB-OP-RS(SECTION 15B)94-67271-1;

## Over a Century of Solutions

Jeff Lorenz, Esquire
January 18, 2008
Page 2

4.  All exhibits designated as Exhibit "H" of the November 2, 1995 Declaration and Agreement of Easement between Ocean Pines, L.L.C. and Ocean Pines Association (the "Easement");

5.  State of Maryland Nontidal Wetlands and Waterways Permit No. 199465634 identified at paragraph 3 of the Easement;

6.  All wetland delineation reports, including but not limited to all figures, aerial photographs, maps, soil and plant surveys and field notes used in preparation of Exhibit G – Section 15B Boundary Survey and Wetlands Location dated October 1993 and prepared by Atlantic Consulting.

Once I have received and reviewed the above identified documents, I will be happy to discuss Mr. Short's FOIA suit with you. I look forward to receiving the above-requested information. In the interim, if you have any comments or questions, please feel free to contact me.

Very truly yours,

Steven D. Urgo

SDU/dct

cc:    Patricia M. Ryan
       Assistant District Counsel

4238161

# EXHIBIT 14



**DEPARTMENT OF THE ARMY**
BALTIMORE DISTRICT, CORPS OF ENGINEERS
P.O. BOX 1715
BALTIMORE, MARYLAND 21203-1715

January 18, 2008

Office of Counsel

SUBJECT: Freedom of Information Act (FOIA) Request from Steven D. Urgo, Esquire
(FOIA Tracking Number 07-021)

*VIA E-Mail and First Class Mail*

Steven D. Urgo, Esquire
Obermayer, Rebmann, Maxwell & Hippel, LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895

Dear Mr. Urgo:

Reference your January 18, 2008 letter relating to the documents provided by the Corps in our response dated January 4, 2008. Ms. Patricia Ryan and Mr. Woody Francis are not in the District today, but I wanted to take this earliest opportunity to reply to you regarding the six items of concern you identified in your letter faxed this morning.

As indicated in our telephone conversation earlier this morning, you have been provided all of the documents possessed by the United States Army Corps of Engineers responsive to your January 16, 2007 Freedom of Information Act (FOIA) request. No records were withheld as exempt. Per our telephone discussion, most of the six items you inquired about do not exist in our records, nor did they exist in Corps records in 2007.

Regarding items one and two on your list, though this agency would have had an application many years ago, at least for the Balfour permit 94-65634-1, our records no longer contain these applications. However, because these permits were issued approximately twelve years ago, were accepted by the applicant/permittees, and were not challenged, it is likely that the permit applications were discarded once the permits were finalized.

Item number 3 inquires about easements and/or covenants identified in the Section 15B permit. As discussed in our phone conversation, the recorded easement was provided to you and is located in the material attached to the letter dated December 26, 1995 from Piper and Marbury, L.L.P. to Mr. Francis. Though it is entirely possible that Piper and Marbury provided a draft of the easement for Mr Francis to review in October 1995, that draft is no longer in the Corps records, and there is no reason to believe it is substantively different from the easement document that was signed 2 November 1995, and subsequently recorded.

2

CENAB-OC
SUBJECT:  Freedom of Information Act (FOIA) Request from Steven D. Urgo, Esquire
(FOIA Tracking Number 07-021)

Item number 4 inquires about Exhibit H to the November 2, 1995 easement.  As previously discussed, and as recounted in your letter to me dated February 14, 2007, the Corps does not have the Exhibit H for Section 15B.

Item number 5 inquired about the State of Maryland Nontidal Wetlands permit.  To the extent that the Corps possesses among its records documents that may have been part of the state's non-tidal (or tidal) wetlands permit process, they were provided with the January 4, 2008 transmittal.  Although applicants submit a joint permit application to the Corps and the State of Maryland, separate records are maintained by the State and Federal regulatory agencies.

Item number 6 seeks material that would have been used in the preparation of Exhibit G, or the jurisdictional determination performed for section 15B, in 1994 or earlier.  Any such documents in the Corps possession have already been provided.  As was the situation regarding items one and two on your list, it is entirely possible that additional records were considered and evaluated during the permit process, but were discarded in the intervening years after the permits were issued and accepted.  The recorded Exhibit G was again provided in the January 4 transmittal.

I trust that our conversation and these responses have demonstrated that the Corps already provided all the documents it possesses responsive to your FOIA request.  I look forward to a conversation early next week among you, Mr. McGovern, Special Assistant United States Attorney Baldrate, and me to discuss dismissal of the matter pending in the U.S. District Court for the District of Columbia.

I will call your office on Tuesday to arrange for a mutually convenient time.  Please feel free to call me at (410) 962-3385.

Sincerely,

Carl Jeffrey Lorenz
Assistant District Counsel

CF:    Patricia Ryan, CENAB-OC
       Brian Baldrate , SAUSA-DDC
       Woody Francis, CENAB-OP-RMS
       Joseph McGovern

**EXHIBIT 15**



# OBERMAYER
REBMANN MAXWELL & HIPPEL LLP

*Attorneys At Law*

**Steven D. Urgo**
215-665-3122
steven.urgo@obermayer.com
Member NY, NJ & PA Bars

One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
215-665-3000
Fax 215-665-3165
www.obermayer.com

<u>**VIA EMAIL AND**</u>
<u>**FIRST CLASS MAIL**</u>

January 24, 2008

Brian C. Baldrate
Special Assistant
United States Attorney Civil Division
555 Fourth St., NW
Washington, DC 20530

Carl Jeffery Lorenz
Assistant District Counsel
Department of the Army
Baltimore District, Corps of Engineers
Office of Counsel
P.O. Box 1715
Baltimore, MD 21203-1715

Re:     ***Short v. U.S. Army Corps of Engineers***, U.S. Dist. Court, D. D.C.,
        **No. 1:07-CV-02260**

Dear Messrs. Baldrate and Lorenz:

We are available to speak with you tomorrow regarding the above-referenced action. To facilitate our conversation, enclosed is our invoice for fees and costs[1] incurred through January 22, 2008 in pursuit of Mr. Short's Freedom of Information Action to obtain Corps' documents pertaining to his October 9, 2002 application for a Jurisdictional Determination (JD) involving his Berlin, Maryland, property. As Mr. Lorenz and I previously discussed, dismissal of Mr. Short's FOIA suit is contingent on an agreement that the Government will reimburse him for his fees and costs.

We would also like to discuss certain documents that – per Mr. Lorenz's January 18, 2008 letter – were not produced. In particular, Exhibit "H" to the November 2, 1995 Declaration and Agreement of Easement for Section 15B of what is commonly known as the Ocean Pines development. This document was provided to the Corps on two previous occasions. In addition, neither the applications for the Corps' permits, nor any documentation that was used in preparing Exhibit "G" - the October 1993 Boundary Survey & Wetlands Location for Section 15B nor the Corps' 1994 Jurisdictional Determination were produced. Please provide us with a copy of the Corps' document retention and destruction policy, along with any index or records that recorded when the above-described documents were destroyed or discarded.

---

[1] Attorney Client Privileged and Corps. Work-Product information redacted.

## Over a Century of Solutions

Brian C. Baldrate, Esquire
C. Jeffery Lorenz, Esquire
January 24, 2008
Page 2

Finally, we are willing to discuss a final resolution of Mr. Short's underlying claim.

Very truly yours,

Steven D. Urgo

SDU/dct

cc:    Patricia M. Ryan
       Assistant District Counsel
       Deirdre Richards, Esquire

4241356

**EXHIBIT 16**

**Francis, Woody NAB02**

| | |
|---|---|
| **From:** | Quinn, Melody J NAB02 |
| **Sent:** | Tuesday, April 27, 2004 4:03 PM |
| **To:** | Francis, Woody NAB02 |
| **Subject:** | Call Back |

Woody,

Mr. Jim Short called and would like you to call him at 410-251-2581 concerning a reverification in Worcester.  He feels it is getting out of hand since Nick Digenerio hired a lawyer so he would like to talk with you direct.

Melody

Steve Dawson; d
meet w/ Short

4 June 04    to discuss
— I requested he show evidence
    of town easement —
— locate additional areas on plan
— we can then address it

1